## MAERIS *et al. v.* BICKNELL *et al.*

Where a ditch was cut by the grantors of the plaintiffs, for the purpose of drainage simply, and not with the *bona fide* intention of appropriating the water thus diverted to some useful object, and the ditches of defendant were built for the express purpose of taking said water, and did do so : *Held*, that thereby they gained a priority over the grantors of plaintiffs, and all persons holding under them.

Merely cutting a ditch for a drain and using the water for no useful purpose, gives no priority.

But where a ditch is made for the purpose of using the water, the right thereto dates from the commencement of the work.

The mere change in the use of water from one mining locality to another, does not forfeit the right.

APPEAL from the District Court of the Eleventh Judicial District, County of Placer.

In the fall of 1851, certain parties, under whom plaintiffs claim, cut a ditch from a certain ravine in Todd's Valley, called Main Ravine. In the beginning of 1852, other parties, under whom defendants claim, cut two ditches from the same ravine, and above the ditch of plaintiffs. This suit was brought to try the right of the parties to the water flowing in the Main Ravine, and to perpetually enjoin defendants from using any of the water, so as to prevent its natural flow to plaintiffs' ditch.

The defendants took the ground that the ditch cut by plaintiffs' grantors was only intended and used as a drain to carry off water from their mining claims, and not to supply water for mining purposes; and that before plaintiffs so applied the water through their ditch, defendants had constructed their ditches and used the water for mining purposes, and thus gained a priority over plaintiffs. The evidence was conflicting upon this point, and the Court below instructed the jury as follows:

"That if they believed from the evidence that the Main Ravine Ditch was constructed prior, in point of time, to the ditch or ditches of the defendants, and the waters of the ravine diverted thereby, it made no difference what the original intention in constructing it might have been, provided the use was not abandoned prior to the time that defendants' rights attached; and that plaintiffs did not lose their rights by varying the use from the original objects of the owners."

The defendants excepted to the giving of the above instructions.

The case was tried by a jury, who found a verdict for plaintiffs, whereupon the Court rendered judgment against the defendants for the damages as found by the jury, and perpetually enjoined defendants from using the water in dispute.

Defendants moved for a new trial, which being denied, they appealed.

*Smith & Hardy* for Appellants.

*Hale & Hillyer* for Respondents.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

Certain instructions were offered by defendants, which were not given by the Court, but as no exception was taken, we cannot notice the action of the Court in this respect.

The first question that arises, and which is the most important one in this case, is whether diverting the water from its natural channel for the purpose of drainage simply, is such an appropriation of that element as to give the party a right as against others who wish to appropriate the water for useful purposes.

In the case of Kelly & Co. *v.* The Natoma Water Company, this Court held that "possession or actual appropriation must be the test of priority in all claims to the use of water, whenever such claims are not dependent upon the ownership of the land through which the water flows."

From this decision, it follows that there must be an *actual appropriation*, and it would seem clear that such actual appropriation must be for some useful purpose allowed by law. In fact, merely turning the water from a claim with the intention to

*dispense* with its use, is no actual appropriation at all. It also follows, from the same decision, that until such actual appropriation there can exist no complete right to the use of the water, for the party may never carry out his intention. But it was also held in that case, that if a party commenced first to construct a work in good faith, then although his power of enjoyment would not commence until its completion, yet the right, as against others, would have relation to the *time of commencement*.

From these principles, it would seem legitimately to follow, that if the ditch of plaintiffs was cut for the purposes of drainage simply, and not with the *bona fide* intention of appropriating the water thus diverted, to some useful object, and the ditch or ditches of defendants were commenced first in good faith with the intent thus to appropriate the water, and before any actual appropriation by the plaintiffs or their grantors for mining purposes, then the defendants gained a priority over the grantors of plaintiffs, and over all persons holding under them.

Unless the grantors of plaintiffs had constructed their ditch with the intention of using the water for mining or other useful purposes, or after its construction they had actually so applied it, the defendants could not know that they ever would so apply it or intended so to apply it. If, at the time plaintiffs' ditch was made, such intention had existed and been avowed, and afterwards carried out in good faith within a reasonable time, considering all the circumstances, then defendants could not, by any act of theirs, rightfully appropriate any water in the ravine, *necessary* to fill the ditch of plaintiffs according to its *actual capacity at the date* of the commencement of defendants' ditch or ditches.

From these principles, it follows that the mere prior construction of a ditch and diverting the waters of a stream will not give the party any priority over others. There must be an actual appropriation, or intention to appropriate, followed by due diligence.

The next question that arises in this case is, whether a party who makes a prior appropriation of water can change the *place* of its use, without loosing that priority as against those whose rights have attached before the change. This question, we think, can admit of but one answer. It would seem clear that a mere change in the use of water, from one mining locality to another, by the extension of the ditch, or by the construction of branches of the same ditch, would by no means affect the prior right of the party. It would destroy the utility of such works were any other rule adopted. As to the question whether a party can change the use of the water from one purpose to another, without affecting his prior right, we express no opinion, as the point does not arise in this case.

The instruction given by the Court below was not just to the defendants, because from its terms, it did not place the claims

of the parties upon the proper grounds, nor state clearly the distinctions necessary to give the jury a correct idea of their duty under the evidence given in the case. For this reason, the judgment must be reversed, and the cause remanded for further proceedings.