# McKINNEY *et al. v.* SMITH *et al.*

THE diversion of the waters of a stream with the object of drainage simply, or without the intention of applying them to some useful purpose, does not constitute an appropriation.

The taking up of the waters of a stream for a special limited purpose is an appropriation of only so much of the water as is necessary for that particular purpose. The surplus may be the subject of a new appropriation, which will give to the second locator a paramount right to the use of all the waters of the stream not required for the specific purpose of the first appropriation.

Plaintiffs constructed a dam across Clear Creek and dug a ditch for some distance along its bank, by means of which all the waters of the stream were diverted and returned to the creek at a point half a mile below. The object of the diversion was to drain the channel of the stream below the dam and supply water for working a tract of mining claims owned by plaintiffs in the bed of the stream. Subsequently defendants dug a ditch at a point above, through which they diverted the waters of the same stream for general mining purposes. Still later plaintiffs extended their ditch to other mining points and to agricultural land below, and used the water for mining and irrigating at these latter places. In an action by plaintiffs to recover for injuries occasioned by the diversion of defendants to the use of the water at the latter points to which plaintiffs' ditch had been extended : *Held,* that the prior right of plaintiffs was limited to the use of the water for working their original claims in the bed of the stream ; that as to the surplus above what was required for that particular purpose, defendants' right was paramount ; and that plaintiffs could not recover.

In an action involving the right to and extent of a water privilege claimed by plaintiffs under an alleged appropriation by a number of copartners, defendants, to limit the extent of the appropriation, offered in evidence a paper, purporting to be a copy of the original locating notice of the copartners, and without direct proof of its execution, showed that it was prepared with a knowledge of some of the partners, and was seen as a posted notice by a portion of them at the point of diversion, and about the time the work was commenced, and that its position was such that it must probably have been seen by all : *Held,* that upon this proof the paper was admissible as part of the *res gesta.*

A new trial will not be ordered because of inaccuracy in the language of a finding of fact when it is sufficiently distinct as to the material question involved in the action.

APPEAL from the Fifteenth Judicial District.

This action was originally commenced in the District Court of Shasta County, and before trial was transferred to the District Court of Tehama County, and by consent was tried by the Court without the intervention of a jury.

McKinney *v.* Smith.

The complaint alleges that the plaintiffs were, in May, 1854, and prior thereto, the owners of a dam across Clear Creek in Shasta County, and of a ditch leading therefrom, and reservoirs connected therewith, constructed for the purpose of diverting and using for mining and agricultural purposes the waters of Clear Creek ; that they also own a large tract of agricultural land, situated near the banks of the stream some distance below the dam, to which the ditch leads and for irrigating which the waters of the stream are necessary ; that subsequent to the appropriation of the waters of the stream by plaintiffs, the defendants, by means of a ditch dug by them from a point on Clear Creek some distance above plaintiffs' dam, diverted its waters and used them for mining purposes ; that thereby the waters were diminished in quantity, and the portion which was returned to the stream was filled with mud and sediment unfitting it for plaintiffs' use, and causing, by its deposits, injury to their ditches and reservoirs.   For these injuries damages were claimed in the sum of $20,000.

The answer denies generally all the allegations of the complaint, and avers a prior appropriation of the waters of the stream by defendants and their grantors, and that they have used the waters only for mining purposes, and returned them into the stream above plaintiffs' dam without any diminution in quality or quantity, except such as necessarily resulted from a careful and judicious use for mining purposes.

The evidence showed that in November, 1853, the plaintiffs built a dam across Clear Creek at the point claimed in the complaint, and dug a ditch from this point along the bank of the stream to a cross ravine called Slate Gulch emptying into Clear Creek about one-half mile below ; that the ditch was of sufficient capacity to carry all the waters of the stream at their ordinary stage, and that in the following winter and spring they were all turned into and run through it to the channel of Slate Gulch and down that channel to the bed of Clear Creek ; that the defendants made no appropriation until the autumn of 1854, when they dug a ditch from the stream a number of miles above and diverted the water and used it for mining purposes ; that subsequent to the location of defendants' ditch, the plaintiffs extended their ditch some miles below and

used the water at points along the extension for mining and irrigating.

To show the character and extent of plaintiffs' original appropriation, defendants proved that plaintiffs at the time of the construction of their dam had mining claims in the bed of the stream immediately below, for the working of which it was necessary that the waters of the stream should be diverted, and offered in evidence what purported to be a copy of a notice recorded by plaintiffs in the Recorder's Office of Shasta County, which read as follows:

"Know all men whom it may concern, that we, the undersigned, have taken possession of a section or point on Clear Creek about one-half mile below Briggsville and about two hundred yards above the Norwegian Wheel, with the view and purpose of constructing and building a dam across said creek at said point, with the view of diverting and turning the water out of the bed of said stream at and below the said dam, in order to facilitate the working and the more effectually enabling us to work the bed of said stream below said dam to the extent of four claims, subject to equitable regulations. Nov. 10th, 1853." Signed with the names of the persons who composed the plaintiffs' company and who constructed the dam and ditch. No proof was made that any of plaintiffs' company signed this notice or posted it; but it was shown by witnesses that a notice of the same purport, and to the best of their judgment the original of this copy, was made out and posted at the point where the dam was made about the time the work upon it was commenced; that this notice remained there for some time and was seen by a number of the members of the company and was in such position that it must probably have been seen by all.    To the introduction of this notice the plaintiffs objected, on the ground that the preliminary proof failed to show that plaintiffs executed it or were bound by it.    The objection was overruled and plaintiffs excepted.

The plaintiffs on their part proved that some Norwegians had mining claims below the point where the dam was built and above the Slate Gulch, and that they assisted in constructing the dam and ditch under an agreement that they were to have a certain amount of water from the ditch for the purpose of working their claims, and that after the completion of the ditch to Slate Gulch

McKinney *v.* Smith.

the water from the ditch was used that season by plaintiffs' company and by the Norwegians to wash the dirt in their respective claims.

The District Court found as a fact that the object of plaintiffs in building their original dam and ditch was to dispense with the water of the stream and drain the bed below, where their mining claims were located, and not to appropriate it for mining purposes, and as a conclusion of law, that the plaintiffs were not entitled to the relief sought. Judgment was entered for defendants. Plaintiffs moved for a new trial, which was denied, and from this order and the judgment they now appeal.

*W. H. Rhodes,* for Appellants.

I. The Court erred in receiving in evidence the copy of a notice purporting to have been a copy taken from the Mining Record Book of Shasta County, for the following reasons:

1st. Because the copy of notice admitted was neither the original notice nor a copy taken from the original. The best evidence that the nature of the case admits must be resorted to, and this is the first rule of evidence in all cases. (1 Greenl. Ev., 3d ed., secs. 82, 85.) There is no statute or custom shown that miners' water notices in the district of Shasta must be recorded, in order to give them efficacy, nor any law, written or unwritten, that copies from such records can be read in evidence. The record itself, if the notice be admissible at all, with proof of the recording thereof, would be better evidence than the purported copy therefrom.

2d. Because the original was not proven. The copy even from official records cannot be read until proof of the original is shown. This proof is generally simplified by statutory regulations—as by the authorized acknowledgments of the makers. It is not proven by the evidence in the case that the original notice was ever signed by a single one of the plaintiffs, or by any one through whom they claim.

3d. Because there was no evidence that the plaintiffs or their grantors, or any one or more of them, ever posted, or authorized the posting or publication, of any such notice. Even if it had been shown that the plaintiffs had in a private room subscribed the

notice, it would have been ineffectual for any purpose, unless they or some of them had authorized its publication.

4th. Because it was not shown that the defendants ever saw or knew even of the existence of such notice before they commenced their work; hence, they could not have been misled by it, nor can it now be used to the detriment of plaintiffs. (*Duell* v. *Bear River Co.*, 5 Cal. 84.)

5th. The only purpose for which the notice was used was, in effect, as an estoppel against plaintiffs setting up any title at all to the water under their location in November, 1853. Now, an estoppel must be specially pleaded before it can be introduced into evidence, in order to prevent surprise and fraud. Here no such plea was set up and, therefore, it was inadmissible under the pleadings. (*Boggs* v. *Merced Mining Co.*, 14 Cal. 367; *Hostler* v. *Hays*, 3 Id. 307.)

6th. But the last and fatal objection to the introduction of this notice is to be found in the character of the notice itself, taken in connection with the proof of the time at which it was signed and posted. It is not a notice setting up a claim to water at all, but simply a regular miner's notice of the claims which those subscribing it intended to work. This was not the act under which the plaintiffs claimed the water, nor even one of them. The notice was simply intended to secure the bed of the creek below the dam for mining purposes. The mining law of this district did not require any notice at all to secure a water privilege. Taking up the point where the dam was to be built and going to work to build the ditch was all that the law required; and if it required any more, the defendants have not shown that they did any more than this. They gave no notice, except their acts *in pais*.

II. The Court below erred in its conclusion of law, that the plaintiff showed only " an appropriation to dispense with the water and not for use."

The Court bases its whole conclusion upon the notice read in evidence. The doctrine of this Court is this: that a mere notice amounts to nothing. (*Jones* v. *Jackson*, 9 Cal. 244.) It is the outward acts of parties that manifest their intentions. The intention to appropriate water for mining purposes is best manifested by

McKinney v. Smith.

creating a dam and actually building a ditch. (*Conger* v. *Weaver*, 6 Cal. 558.) Now, the proof in this case is conclusive that the plaintiffs' dam and ditch were in full operation before the initiatory steps of defendants were taken. But the whole evidence should be taken together. In this sense the acts of a party may be simply words, and these declarations are always admissible in evidence to show intention, if accompanying the acts themselves. (1 Greenl. Ev., 3d ed., secs. 108, 110.)

III. The Court erred in its conclusion that the plaintiffs, having taken the water no further than Slate Gulch before the survey of defendants, could not, therefore, afterwards extend the line of their ditch below or elsewhere just as they pleased. It is not the quantity of water actually used by plaintiffs that determines the extent of their rights, but the size and capacity of their ditches. When a work of this magnitude is projected, it may be that for months or even years much of the water will run to waste or be evaporated in reservoirs before the final result of the speculation can be tested.

Nor does the point of present use affect in any manner the extent of appropriation. This the Supreme Court expressly decided in the very case relied upon by the Court below to sustain one of its positions. (*Maeris* v. *Bicknell*, 7 Cal. 261.) The Court say: " The next question that arises in this case is, whether a party who makes a prior appropriation of water can change the place of its use without losing that priority as against those whose rights have attached before the change." The question, we think, can admit of but one answer. It would seem clear that a mere change in the use of water from one mining locality to another by the extension of the ditch or by the construction of branches of the same ditch would by no means affect the prior right of the party. (Id. 263.)

The only real point in controversy here is, and ought to be, would the plaintiffs' ditch at the time of the survey of the defendants carry the whole of the water of Clear Creek ?

*A. P. Crittenden,* for Respondent.

I. There was no error in admitting the notice in evidence.

1. It was not necessary for the defendants to prove the execution

of the notice, but only the fact of its having been posted up by the plaintiffs at their dam or ditch. It was material evidence as a fact indicative and declaratory of the purpose and intention of plaintiffs in constructing their dam and ditch. It makes no difference whether it was printed, or was signed by the plaintiffs or by others for them. It is enough to show that it was adopted by the plaintiffs and published by posting or recording. The question is, did the plaintiffs authorize the publication.

2. It was not necessary for the defendants to show that they had notice of the existence of the notice. The very ground upon which alone plaintiffs supposed prior right to the water can exist is, that their acts in appropriating it and applying it to use, were open and notorious, and that defendants were bound to know them. The notice to defendants of these acts is presumed in favor of plaintiffs, and is the very foundation of their claim. The posting of the notice is one of the acts to which that presumption applies.

The whole question then is, what was proved by those acts which defendants were bound to know. One of these acts was the posting of the notice.

The plaintiffs say their acts indicated an appropriation of the water for mining purposes. The defendants say they indicated an intention simply to divert the water. Upon this point the notice is significant and indeed conclusive proof. It gave character to all their other acts which might, otherwise, be construed either way.

The notice was not required to be specifically pleaded as an estoppel. It was one of the acts of plaintiffs connected with the taking of the water, and indicative of the purpose of the taking. It was no more required to be specially pleaded than the fact that the water was taken from Clear Creek by plaintiffs, carried to Slate Gulch, and there turned back into the creek, showing a diversion only, not an appropriation.

II. The Court did not err in any conclusion of law that the plaintiffs showed only " an appropriation to dispense with the water and not for use."

The conclusion of fact drawn by the Court (and this is a conclusion of fact, not of law) did not rest alone on the notice, though that was sufficient, but on the acts of plaintiffs in letting the water flow back into the creek.

McKinney *v.* Smith.

There is no question in this case about the right of plaintiffs to alter the place of use of the water. It is a question only of the object of the appropriation. The finding is conclusive on that point. If objected to it would be found fully sustained by the evidence, not only by the notice but by the turning of the water back into the creek where it was flowing when Smith's right accrued.

From that fact he was authorized to draw his conclusion and to act upon it, as he did. Any subsequent appropriation of the water by plaintiffs to mining purposes would then be subject to Smith's prior right. The law of this case has been fully settled by this Court. ( *Conger* v. *Weaver*, 6 Cal. 549 ; *Maeris* v. *Bicknell*, 7 Id. 261 ; *Thompson* v. *Lee*, 8 Id. 275 ; *Kimball* v. *Gearhart*, 12 Id. 27 ; *Ortman* v. *Dixon*, 13 Id. 33 ; *Kelly* v. *Natoma Water Co.*, 6 Id. 105.)

NORTON, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The appropriation of the water of a stream in order to apply it to some useful purpose secures a right which cannot be infringed upon by a subsequent appropriation of the water by others. But in the case of *Maeris* v. *Bicknell* (7 Cal. 261) it was decided that diverting the water from its natural channel for the purpose of drainage simply is not an appropriation of the water. And in the case of *Ortman* v. *Dixon* (13 Cal. 33) it was decided that the taking up of the water of a stream for a particular purpose—to wit : to run a mill—was an appropriation of only so much of the water as was necessary for that purpose, and did not secure a right to all the water at that point, if there was more than enough for that purpose, and that a person so appropriating the water for the special purpose could not afterwards appropriate the surplus to the detriment of other persons who had in the *interim* appropriated that surplus.

In this case the plaintiffs and those under whom they claim built a dam across Clear Creek and by means of a ditch conducted all the water of the stream into Slate Gulch, through which, as a natural channel, it flowed back into Clear Creek at a point some distance below the dam. After their works were completed they

worked the bed of Clear Creek below the dam and above the mouth of Slate Gulch for mining purposes. Soon after the water was thus conducted into Slate Gulch, the defendants commenced a dam and ditches on Clear Creek, by means of which they appropriated the water for mining purposes at a point many miles above the plaintiff's dam. After this the plaintiffs, by means of flumes and ditches, conducted the water from the point where it was first discharged into Slate Gulch across that gulch, and appropriated it to the use of mining and irrigating at points below Slate Gulch. The Court below found as a fact, that the turning the water from Clear Creek into Slate Gulch was a diversion to dispense with the water and not a diversion for appropriation. And as a conclusion of law, the Court decided that " defendants being the prior locators were entitled to the use of the water, and that plaintiffs cannot maintain an action for damages for the causes set forth in the complaint." The plaintiffs moved for a new trial, on the ground that the evidence was insufficient to justify the finding of facts upon which this conclusion is founded. The fact found upon which this conclusion rests is, that the turning of the water by the plaintiffs into Slate Gulch was a diversion to dispense with it and not to appropriate it.

The grievance stated in the complaint is the injury caused to the plaintiffs in their use of the water for mining and irrigating purposes below Slate Gulch. It does not appear in the complaint, nor is it urged on the argument, that the use of the water by the defendants has interfered with any use of the water by the plaintiffs at any point between their dam and Slate Gulch. Between these points the evidence shows and the Court finds that some use of the water by the Norwegians for mining purposes was made before the defendants began their works, and it was proved, also, that the water from the ditch was used to work the bed of the creek. The use of the water by the Norwegians to be taken from the ditch was provided for at the inception of the project, and its actual use by them and its use in working the bed of the creek, is conclusive that the water was in fact appropriated for use between the dam and Slate Gulch before the defendants' right accrued. The notice posted by the plaintiffs is, however, very explicit that their purpose in taking possession of the section or point on the creek was to build a dam

" with the view of diverting and turning the water out of the bed of said stream at and below said dam, in order to facilitate the working and the more effectually enabling (them) to work the bed of said stream below said dam to the extent of four claims, subject to equitable regulations." It is not necessary to decide whether the terms of this notice are such as would estop the plaintiffs from claiming a right, as against subsequent appropriators, to the use of the water in their ditch so far as it was necessary to work the bed of the creek to the extent of four claims, because we think this notice, as well as all the other facts proved, establishes that at most the water was appropriated for a special and limited purpose—to wit: the working of the bed and banks of the creek below the dam to the extent of four claims or at the furthest to the mouth of Slate Gulch—and that hence, the Court below, under the rule cited from the case of *Ortman* v. *Dixon*, rightly decided that this action could not be maintained for damages for the causes set forth in the complaint, which were, as we have seen, for injury to the use of the water below Slate Gulch.

We are aware that in the case of *Maeris* v. *Bicknell* it was decided that a party who makes an appropriation of water can change the place of its use, as by an extension of the ditch, without losing his priority as against those whose rights have attached before the change, but the Court expressly reserved the expression of any opinion whether a party could change the use of the water from one purpose to another without losing his priority. In this case there was no general appropriation of the water by the plaintiffs before the defendants' rights attached. The direct object of their works was to drain the bed of Clear Creek at a certain point, and the ditch was necessarily of sufficient capacity to carry all the water in order to effect that object, and they may have had a prior right to the use of sufficient water to work the bed of the creek at that locality without thereby securing a prior right to all the water of the creek, to be used in some distinct and separate undertaking at any indefinite future period, in the same manner as a sufficient quantity might have been appropriated to run a mill without securing a right to the surplus to be afterwards applied to mining pur- poses. There may be difficulty in many cases in determining that

the appropriation was limited to a special purpose or to a particular locality. Each case must be decided upon its peculiar facts. In this case the limited character of the right is distinct and clear, and it would be a serious restriction upon the valuable use of the means of carrying on mining in this State if an appropriation of the limited character proved in this case, assuming that there was such an appropriation, could have the effect to withdraw all the waters of such a creek from all other use for an indefinite period. On the facts, as they existed when the defendants began their works, they had the right to appropriate the water to any use that would not interfere with the plaintiffs' use of it for the special purpose to which they had then appropriated it.

No *express* distinction is made by the plaintiffs in their complaint or by the Court in its finding between the right of the plaintiffs to the use of so much water as might be necessary to work the bed of Clear Creek above Slate Gulch and their right to use the water for mining or irrigating purposes below Slate Gulch. But the plaintiffs allege that by their ditch they conducted the water on to mining grounds two miles below the dam, and the diagram shows the agricultural land to be still further below. It is for injury to the right to use the water at these localities that the complaint seeks redress. Slate Gulch is only half a mile below the dam. In its finding the Court says: " No survey was made for a ditch below Slate Gulch at that time (November, 1853) and for some time after, nor was any notice given, or tree blazed, or stakes set to mark such line. The water was discharged from their ditch into Slate Gulch, and through the natural channel of Slate Gulch found its way back to Clear Creek *below the mining claims* and notice of plaintiffs. This was clearly a diversion to dispense with the water and not a diversion for appropriation." And the conclusion of law, which is the matter particularly specified as the ground for asking a new trial, is, as before stated, that the " plaintiffs cannot maintain an action for damages *for the causes set forth in the complaint.*" It is clear that the question which was litigated by the parties and considered by the Court was, whether the plaintiffs had appropriated *all* the water of Clear Creek at the time they diverted it and discharged the bulk of it into Slate Gulch; and the finding of the Court is, in

substance, that they had not appropriated that portion which was discharged into Slate Gulch, and in reference to which this action was brought.   It is not requisite to order a new trial for the purpose of having the language of the finding made more exact, when it is sufficiently distinct as to the subject matter of the action.

The proof was sufficient to authorize the notice to be given in evidence as a part of the *res gesta.*

It was shown to have been prepared with the knowledge of some of the copartners, and seen by them as a posted notice; and that it was so posted as that, in the language of one of the witnesses, it " must have been seen " by the others.

We think the case was properly decided, and that the judgment should be affirmed.