## D. A. DAVIS, WM. HENDERSON AND J. McNAUGHTON *v.* O. P. GALE.

PRIOR RIGHT TO WATER BY APPROPRIATION.—A person who has appropriated the water of a stream, and caused it to flow to a particular place by means of a ditch, for a special use, may afterwards change the use to which he first applied the water, and the place at which he used it, without losing his priority of right, as against one who has dug a ditch from the same stream before the change is made.

IDEM.—One who has appropriated the water of a stream by means of a ditch for the purpose of working a particular mining claim, may, after he has worked out the claim and abandoned the same, extend his ditch and use the water at other points, and for a different purpose, without losing his priority of right as against one who afterwards dug a ditch from the same stream and appropriated water before the claim was worked out.

RIGHT TO WATER.—Appropriation and use for a beneficial purpose are the tests of right to water in the mineral regions, while the place and character of its use are not such tests.

ABANDONMENT OF WATER RIGHT.—The facts that water was appropriated for a particular purpose, and that the purpose has been fully accomplished, and that when accomplished the appropriators dispersed and allowed a long time to elapse without using the ditch, and then sold it for a nominal sum, may be received in evidence as tending to show abandonment.

IDEM.—One who has abandoned his prior right to the use of water cannot by afterwards making a sale of the same revive his prior right in favor of his grantees, even if the sale is made in good faith.

STATUTE OF LIMITATIONS AS TO WATER.—If one who has the prior right to the use of water permits another to acquire and hold for five years continuous adverse possession of the same, or any part thereof, he loses his right to the same or that part thereof which the adverse possessor enjoyed.

TURNING WATER INTO STREAM WITHOUT INTENDING TO RECAPTURE IT.—If two persons, one prior in point of time to the other, appropriate water from the same stream, by means of ditches, and a third person turns water into the stream from his ditch starting out of another stream, without the intention of recapturing it, the water thus turned in becomes *publici juris*, and belongs to the persons who appropriated the stream, according to their priority of right.

RIGHTS OF PRIOR APPROPRIATOR OF WATER.—If two persons appropriate water from the same stream, one prior in point of time to the other, and a third person builds a flume in the stream so as to increase the flow of water, the prior appro-

priator is first entitled to the increased flow of water, to the extent of his appro-
priation.

STATUTE OF LIMITATIONS AS TO WATER RIGHTS.—If one who has taken adverse
possession of water, as against a prior appropriator, suffers a portion of the same
to flow down to accommodate miners working in the stream, this does not preju-
dice his adverse possession so as to prevent the Statute of Limitations from run- .
ning.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

This action was commenced in October, 1864. In 1852 the Tuolumne Water Company excavated a ditch from the Tuolumne River and Five Mile Creek. This company had a surplus of water which it turned into Mormon Creek above the heads of plaintiffs' and defendant's ditches, until the summer of 1864, when it was able to use it all by an extension of its ditch. There was a company of miners at work in the bed of Mormon Creek below head of defendant's and above the head of plaintiffs' ditch, who claimed the right to have water flow down the creek to their claim. The defendant from 1853 up to the commencement of the suit had been in the habit of turning down to this company of miners, from twenty-seven to forty-five inches of water, when they needed it to work their claim. Some miners also constructed a flume along the bed of the creek above the head of defendant's ditch, which it was claimed increased the flow of water to the head of defendant's ditch. Defendant claimed the first right to this increase of water. Defendant asked the Court to instruct the jury as follows:

" If there is water enough in Mormon Creek during a great portion of the year to supply both defendant's and plaintiffs' ditches, then both parties have the right to use said water as long as they do not interfere with the rights of each other; but if, during a portion of the year, to wit, the latter part of the dry season, there is not water enough in said creek to supply both of said ditches to their full capacities, and if during such scarcity of water defendant, with full knowledge of plaintiffs, appropriates all the water of said creek and turns it

into his ditch, claiming title thereto, that such appropriation, use, occupation and possession of the first use of said water by defendant, is adverse to the claim of plaintiffs to said water, and if the jury find, from the evidence, that the defendant has so appropriated and possessed the first use of said water quietly, peaceably, and without let or hindrance from any one, whenever there was such scarcity of water, for a period of over five years, during the dry season next before the commencement of this suit, then they must find for the defendant.

" If during the dry season defendant turned out forty-five inches of water from his ditch into the creek, or let it pass the head of his ditch, for the use of miners at work on the banks of the creek below, and if after said water has been used plaintiffs turn it into their ditch, there not being enough to give them a supply, such use of the waters by plaintiffs is no interference with the quiet, peaceable and adverse use of the water by defendant.

" If you find that the plaintiffs' grantors originally took and appropriated six streams of water, and the defendant thereafter took and used five of such streams, continuously and uninterruptedly, for a period of five years prior to the commencement of this action, with the knowledge of plaintiffs or their grantors, in such case the defendant would acquire an absolute right to such five streams so taken and used by him, by virtue of the Statute of Limitations, notwithstanding the plaintiffs used their ditch and the remaining stream of water during said five years continuously, and the plaintiffs cannot recover such five streams in this action."

The Court refused said instructions, and defendant's counsel excepted.

The words " stream of water," as used in the last of said instructions, was defined on the trial by witnesses to mean a sluice head of twelve inches.

The other facts are stated in the opinion of the Court.

*Caleb Dorsey,* for Appellant.

The first appropriation of the water by plaintiffs' grantors was for a specific purpose, to wit, to work their own claims. After they had accomplished this purpose and worked out their claims they could not change the character of their appropriation so as to interfere with defendant's rights. Defendant had made a general appropriation of the water before plaintiffs' grantors had worked out their claims, and even if plaintiffs could change the character of the appropriation of their grantors they could not do so as against defendant who had acquired rights before any manifestation was made of a new appropriation. The principle in appropriating water should be the same as that which applies to mining ground. (*O'Keef* v. *Cunningham,* 9 Cal. 590.) In *Macris* v. *Bicknell,* 7 Cal. 261, the point was not decided, but was reserved. Even if plaintiffs' grantors after they left the ditch asserted a right to it by preventing any one else from using it, this was not an assertion to the right of the water. Water is held by appropriation and use. (*McKinney* v. *Smith,* 21 Cal. 388.) The evidence tended to show that defendant had been more than five years in the adverse possession of the water. The Court should have given the instructions refused. The fact that defendant turned out a part of the water to miners below did not destroy his adverse possession. Besides, even if defendant had adverse possession of a part of the water, the statute would run as to this part.

*E. F. Hunter,* for Respondents, confined his argument to the point as to whether the verdict was warranted by the evidence.

*George Cadwalader,* also for Respondents.

The first instruction not given was correctly refused because the words " *the latter part of the dry season* " are too vague, and too small a space of time would satisfy them. It makes the adverse use by defendant for five dry seasons sufficient for the Statute of Limitations, instead of five consecutive years. It does not tell the jury that defendant's adverse possession

must have been exclusive for five years. To perfect defendant's title under the statue there must have been five years continuous diversion of the water from plaintiffs. (Washburne on Easements, p. 221.)

The second instruction refused is not law. If defendant turned the water down to miners he did not have adverse possession of it. Besides, when defendant turned the water down, it reached plaintiffs. The last instruction refused is inexplicable as it assumes that there may be a division of water into streams. It seems also to create a kind of tenancy in common, or partnership, in the waters of a creek.

. By the Court, SANDERSON, J.:

Action to restrain the defendant from diverting the waters of Mormon Creek, in Tuolumne County, to the prejudice of the plaintiffs' prior rights, and for damages already sustained. The case was tried with a jury in the Court below, and a general verdict in favor of the plaintiffs was rendered. Under the direction of the Court, the jury also rendered a special verdict, in view of which it was claimed by the defendant that the judgment should go with him. The Court held otherwise, and rendered a judgment for the plaintiffs for the amount of damages found by the jury, and perpetually restraining the defendant from interfering with or diverting the waters of the creek at any time in such a manner as to interrupt or disturb the use of the plaintiffs to the extent of their interest therein, which was fixed at sixty-two inches. A motion for a new trial was made and denied.

The complaint is in the usual form in such cases. An appropriation and continuous use of the waters of Mormon Creek, running as far back as the spring of 1851, for mining and agricultural purposes, by means of a ditch dug for that purpose, is alleged; and also a subsequent diversion of the water to the prejudice of the plaintiffs by defendant, by means of a ditch which taps the creek at a point above that of the plaintiffs.

The defendant denies the prior right of the plaintiffs, and sets up a prior right in himself, and avers an appropriation and continuous use of the waters of the creek to the capacity of his ditch, which is four hundred inches, for mining and agricultural purposes, from a date prior to the appropriation of the plaintiffs.

The defendant further alleges that the plaintiffs' ditch was dug out and the waters of the creek appropriated by them or their grantors solely for the purpose of working a few mining claims which belonged to the first owners of the ditch ; and that said claims were worked out, and, together with the ditch, abandoned by the then owners long prior to the time at which the plaintiffs became the owners or possessors of the ditch.

He further avers that he and his grantors have been in the quiet and peaceable possession of the waters of the creek to the full capacity of his ditch for about thirteen years, prior to the commencement of this action, without let or hindrance on the part of the plaintiffs or their grantors.

He also seeks the protection of the Statute of Limitations, and avers that neither the plaintiffs nor their grantors have been in the possession of the waters of the creek within five years next preceding the commencement of this action, except in subordination to the alleged right of the defendant to divert the same to the extent of four hundred inches.

No exceptions were taken to the admissibility of evidence, and all the questions made by counsel relate to the law of the case, as applicable to the facts specially found by the jury, and as construed by the Court in refusing and giving instructions.

The plaintiffs' ditch was dug in March or April, 1851, and sixty-two inches of the waters of the creek thereby appropriated. The ditch was dug and said appropriation made solely for the purpose of working certain mining claims which belonged to the parties by whom the ditch was dug ; and said purpose was fully accomplished prior to the fifth of July, 1855, which was the date at which the ditch was sold to Reynolds, Goodwin & Co., by whom the ditch was extended

and afterwards sold to Battenfield in May, 1858, who after-
wards sold to plaintiffs on the tenth of February, 1864.    More
than two years intervened between the date at which the
mining claims were worked out and abandoned and the first
sale of the ditch ; during which time the owners made no use
of the ditch, but went to other parts, leaving the ditch, how-
ever, in the care of one Demple, with license to use the same.
The plaintiffs now use and seek to use the waters of the creek
for mining and other purposes · at other localities than those ·
for which their ditch was originally constructed, which was
also true of Reynolds, Goodwin & Co., and Battenfield, while
they respectively owned the ditch.

The defendant's ditch was dug in August or September,
1851, and prior to any change in the use of the water by
plaintiffs' first grantors.

The foregoing are all the facts that are useful in illustrating
the points made upon the evidence.    The other facts bear
more especially upon the question of the Statute of Limita-
tions, and will be noticed hereafter.

The fact that the plaintiffs' ditch was dug and their appro-
priation first made solely for working certain mining claims,
long since worked out and abandoned, gives rise to the princi-
pal question.    In view of that fact it is claimed that the
plaintiffs' first grantors lost their right to the use of the
waters of the creek the moment the purpose for which
they first appropriated them had become accomplished, and
that neither they nor their grantors could thereafter right-
fully claim the use of the water, on the score of their original
appropriation, for the purpose of working other claims, and
that hence, conceding the original appropriation of the plain-
tiffs to have been prior to that of the defendant, the relative
rights of the parties became changed when the original object
of the plaintiffs had been accomplished, and thereafter the
defendant became first in right and the plaintiffs second.

How far a party's right to the use of water is limited by
the object for which it was first appropriated arose in the
case of *Maeris* v. *Bicknell*, 7 Cal. 261.    Mr. Justice Burnett,

by whom the opinion of the Court was delivered, said : " The next question which arises in this case is, whether a party who makes a prior appropriation of water can change the place of its use without losing that priority as against those whose rights have attached before the change. This question we think can admit of but one answer. It would seem clear that a mere change in the use of water, from one mining locality to another, by the extension of the ditch, or by the construction of branches of the same ditch, would by no means affect the prior right of the party. It would destroy the utility of such works were any other rule adopted. As to the question whether a party can change the use of the water from one purpose to another without affecting his prior right, we express no opinion, as the point does not arise in this case."

Some doubt as to the soundness of this view seems to have been afterwards entertained, but for what reason we are at a loss to perceive. In *McKinney* v. *Smith,* 21 Cal. 383, Mr. Justice Norton said : " We are aware that in the case of *Maeris* v. *Bicknell* it was decided that a party who makes an appropriation of water can change the place of its use, as by an extension of the ditch, without losing his priority as against those whose rights have attached before the change, but the Court expressly reserved the expression of any opinion whether a party could change the use of the water from one purpose to another without losing his priority. * * * There may be difficulty, in many cases, in determining that the appropriation was limited to a special purpose or to a particular locality. Each case must be decided upon its peculiar facts. * * * On the facts as they existed when the defendants began their works they had the right to appropriate the water to any use that would not interfere with the plaintiffs' use of it for the special purpose to which they had appropriated it."

Suppose a party taps a stream of water for the purpose of surface mining in a given locality, and afterwards finds that

the ground will not pay or that ground further on will pay better, may he not abandon the former and extend his ditch to the latter without losing his priority? Or suppose, after working off the surface, he finds quartz, may he not erect a mill and convert the water into a motive power without forfeiting his prior right? Suppose he appropriates the water for the purpose of running a saw mill, and, after the timber is exhausted, he finds that a grist mill will pay—may he not convert the former into the latter without surrendering his priority to some one who may have subsequently and in the meantime tapped the same stream?

We think all this may be done, and are unable to suggest a plausible reason why it may not. In cases like the present a party acquires a right to a given quantity of water by appropriation and use, and he loses that right by nonuse or abandonment. Appropriation, use and nonuse are the tests of his right; and place of use and character of use are not. When he has made his appropriation he becomes entitled to the use of the quantity which he has appropriated at any place where he may choose to convey it, and for any useful and beneficial purpose to which he may choose to apply it. Any other rule would lead to endless complications and most materially impair the value of water rights and privileges. The water rights involved in this case may not be of great value, and their acquisition may not have been attended with much expense, but there are many similar privileges which have been secured only by the use of large sums of money, and to hold that they are limited to the particular place or to the particular purpose in view of which they were first sought would, for obvious reasons, lead to most pernicious results and greatly delay and embarrass the development of the resources of the country.

The only question which can legitimately arise in connection with the facts under consideration is abandonment. The fact that the water was appropriated solely for a special and particular purpose, and the further fact that that purpose had been fully accomplished, and the further fact that the parties

concerned in it had dispersed to other parts, and that more than two years were allowed to pass without their giving any attention to the ditch, and then only to make a sale of it to others at the nominal sum of twenty-five dollars, all bear directly on that question. In view of those facts, a jury might find abandonment, and in that event the subsequent sale to Reynolds, Goodwin & Co., whether in good faith or not, would not have revived the right which was secured by the first appropriation.

There was testimony tending to show that the defendant had been in the adverse possession of the water of Mormon Creek, as against the plaintiffs and their grantors, to the capacity of his ditch, for more than five years prior to the commencement of the action, and the instruction asked by the defendant bearing upon the Statute of Limitations ought to have been given. Although the plaintiffs may have had the prior right, yet if they or their grantors allowed the defendant to acquire and hold for five years adverse possession of the water which they had appropriated, or any part thereof, they, to that extent, lost their right by force of the statute. Upon this question, in *The Union Water Company* v. *Crary*, 25 Cal. 509, we had occasion to say that "The right of the first appropriator may be lost, in whole, or in some limited portions, by the adverse possession of another. And when such person has had the continued, uninterrupted and adverse enjoyment of the watercourse, or of some certain portion of it, during the period limited by the Statute of Limitations for entry upon lands, the law will presume a grant of the right so held and enjoyed by him."

The fact that the Tuolumne Water Company at one time turned water from their ditch into Mormon Creek, thereby increasing the volume of water, and the further fact that some strangers flumed the creek between the defendant's ditch and that of the plaintiffs, have, as we conceive, no direct bearing upon the rights of either party. If the water of the Tuolumne ditch was turned in without any intention of recapture, it became *publici juris* and inured as much to the benefit of the

plaintiffs as the defendant. Their rights thereafter remained relatively the same as before, and were not differently affected than they would have been had the increase of water been due to some natural cause. So as to the fluming of the creek. If the effect was to decrease absorption and evaporation so that the creek thereafter would have delivered water at the plaintiff's ditch at seasons when otherwise it would not have done so, the increased facilities inured as much to the benefit of the plaintiffs as if they too had resulted from some natural cause instead of the agency of strangers.

Nor was the adverse possession of the defendant, as against the plaintiffs, in any manner prejudiced by the fact that the defendant from time to time yielded to the demands of the miners at work below his ditch and allowed a certain quantity of water to flow down to them for their use. If that was the only reason why he allowed the water to pass, his doing so was no concession to the claim of the plaintiffs.

The order denying a new trial is reversed and a new trial is granted.