GIOVANNI RAMELLI, APPELLANT, v. JOSEPH IRISH, RESPONDENT.

WATER RIGHTS — APPROPRIATION UPON PUBLIC LAND — RIGHTS OF APPROPRIATOR AGAINST PURCHASER FROM GOVERNMENT. — The right to the use of water flowing in a stream over public land of the United States may be acquired by appropriation; and when such an appropriation has been made for some useful or beneficial purpose, the rights acquired by the appropriator will be recognized and protected as against another person who subsequently obtains title to the land from the government.

ID. — CHANGE OF PLACE OF DIVERSION — CHANGE OF USE. — A person entitled to the use of the waters of a stream by appropriation may change the place of diversion, or the place where it is used, or the use to which it was first applied, if others are not injured by such change.

ID. — RELATION OF PATENT FOR HOMESTEAD — PRIORITY OF WATER RIGHTS. — Though a patent to a homestead claimant may relate back to a point of time five years before its date, still, his rights as a riparian propr.etor are subordinate to those of an appropriator who constructed a new ditch before that time, or who had succeeded to and still retained a complete equitable title to an old ditch, constructed long before by first appropriators, and to the water right thereby acquired, which had never been abandoned or lost.

APPEAL from a judgment of the Superior Court of El Dorado County.

The facts are stated in the opinion.

*Blanchard & Swisler,* for Appellant.

*Irwin & Irwin,* for Respondent.

BELCHER, C. — The controversy in this case is as to the respective rights of the parties thereto to divert and use for purposes of irrigation the natural waters of a small stream in El Dorado County, known as Slate Creek. Each party alleges that his right to the said waters is prior and superior to that of the other.

At the trial, when the plaintiff rested his case, the defendant moved for a nonsuit, upon the grounds: "That plaintiff has failed to show that at the time the water was diverted from the bed of the stream by the defendant, the quantity of water at head of plaintiff's ditch was thereby diminished; that the evidence given shows that the defendant was lawfully entitled, as riparian proprie-

tor, to the water diverted by him, and that none of the waters have been diverted away from the stream; that the evidence given does not show that the plaintiff was entitled to any of the waters diverted by the defendant."

The court granted the motion, and the plaintiff thereupon appealed from the judgment.

The facts proved were, in substance, as follows: Slate Creek runs through land owned by defendant, and to which he acquired title from the government by a homestead patent in April, 1885. It carries at the beginning of the irrigating season twenty or more inches of natural water, measured under a four-inch pressure, but the quantity diminishes as the season advances, and at the end thereof there are not more than four or five inches.

As early as 1857, a ditch, now called the "Schlein ditch," was constructed to take water from Slate Creek, and carry it away to be used in mining. It started at a point a little above the lower line of the land now owned by defendant, and took not only the natural water of the creek, but other water received from flumes passing a short distance above its head. In 1858, one Craig purchased the ditch, and thereafter held and owned it until 1873. During the time he so held the ditch he sold water conducted through it to miners, and used some of the water to irrigate his land. In 1873, he conveyed his land to one Theodore Schlein, and intended to convey the ditch, but did not mention it in his deed. He testified: "I still owned it [the ditch] until I sold it to Mr. Schlein. I sold my ranch, and that with the ranch. I did not give a deed of the ditch,— I forgot to put it in the deed. This ditch ran to the land I sold to Mr. Schlein. I used this ditch for irrigating on a portion of this land. . . . . This Schlein ditch was used in connection with my ranch, and I sold water through it. This ditch took the natural waters of Slate Creek from the time it was cut, some time in 1856 or 1857. . . . . Schlein took possession of this Schlein ditch at the time I sold the ranch; the deed is dated December 30, 1873. Mr. Schlein took possession of the ranch and ditch at the same time."

In March, 1875, Schlein sold the ditch to the plaintiff, Ramelli, and he testified: "I entered into possession of the Schlein ditch in November or December, 1873, and continued in possession until I sold it to Mr. Ramelli. After I sold it to him, he went into possession of it and used it. I went into possession of it through Mr. Craig's conveyance. At the time I purchased this ranch of Mr. Craig, the ditch extended on to that land, — on to that ranch. . . . . At the time I bought the ranch of Mr. Craig, it was intended to include the ditch also, and I used this ditch, in connection with the ranch, for irrigating purposes on the ranch, while I owned the ditch and had possession of the ditch."

In July, 1876, the plaintiff purchased a piece of land; and ten or twelve years before the trial, which was in June, 1891, constructed a ditch called the "Ramelli ditch," which commenced at a point in Slate Creek about a hundred feet below the head of the Schlein ditch and extended thence to his land, about a mile distant. From the time of the construction of this new ditch, plaintiff diverted the waters of the creek through it, and used them for mining on his land, and for irrigating crops on a portion thereof, until July, 1888, when the defendant, above the point of plaintiff's diversion, wholly obstructed the flow, and thereafter refused to let any water pass down to plaintiff's ditch. At that time, plaintiff had growing on his land and was irrigating about an acre and a half of potatoes, some clover, fruit-trees, and blackberries, all of which, as he says, for want of the water turned away, dried up and were destroyed, to his damage in the sum of three hundred dollars.

The prayer of the complaint was for an injunction and damages.

We think the court erred in granting the nonsuit. It is settled law that the right to the use of water flowing in a stream may be acquired by appropriation; and when an appropriation has been made upon public land of the United States for some useful or beneficial purpose, the rights so acquired will be recognized and protected, as

against another person who subsequently obtains title to the land from the government. (*De Necochea* v. *Curtis*, 80 Cal. 397.) It is also settled law that the person entitled to the use of water may change the place of diversion, or the place where it is used, or the use to which it was first applied, if others are not injured by such change. (Civ. Code, sec. 1412; *Kidd* v. *Laird*, 15 Cal. 162; 76 Am. Dec. 472; *Davis* v. *Gale*, 32 Cal. 27; 91 Am. Dec. 554.)

Here it appears that the waters of Slate Creek were appropriated for a useful purpose as early as 1857. And the evidence tended to show that the plaintiff had at least obtained a complete equitable title to the ditch then constructed, and the water right thereby acquired, and that the same had not been abandoned or lost. The plaintiff also constructed his new ditch some time between 1879 and 1881, and thereby again diverted and appropriated the waters of the creek. And after this appropriation he continued to use the waters for useful purposes until 1888, without any objection, so far as appears, on the part of the defendant. The defendant's patent may relate back to a point of time five years before its date, and still his rights as a riparian proprietor to claim and use the water on his land would be subordinate to those of the plaintiff, if the latter constructed his "Ramelli ditch" before that time, or had succeeded to and still retained the rights of the first appropriators.

Under these circumstances, we think the case should have been fully tried, and the rights of the parties determined in view of all the evidence.

We advise that the judgment be reversed, and the cause remanded for a new trial.

VANCLIEF, C., and FOOTE, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded for a new trial.

PATERSON, J., GAROUTTE, J., McFARLAND, J.