[S. F. No. 3665.   Department Two.—February 6, 1907.]

MARK CALKINS, Respondent, v. SOROSIS FRUIT COMPANY, Appellant.

WATER-RIGHTS—CONVEYANCE OF LAND—APPURTENANT RIGHT — SUBSEQUENT DIVISION AND AGREEMENT—RIGHT TO DISPOSE OF SURPLUS WATER.—Where the owner of a farm having a water-right, for the purpose of irrigating the farm and disposing of the surplus water to other farms, sold and conveyed a part of the farm and a proportionate share of the water-right, with the right to convey the water across lands of the grantor to the lands of the grantee, and they subsequently divided the water by agreement, by means of flumes, so as to give an increased flow to the grantee, by the terms of which agreement they agreed to convey to each other the right to receive and use all the water that might flow in their respective flumes and ditches, and to share the proportionate expense of the main ditch to the point of diversion, and that the grantee's right should be appurtenant to his lands, as a part thereof, and for the benefit of said lands,—the grantee has the right to dispose of the use of any surplus water flowing through his flume and ditch to owners of adjoining lands when not needed for full use on his own land.

ID.—CONSTRUCTION OF AGREEMENT — "APPURTENANT" — "BENEFIT OF LAND."—The effect of the agreement making the water-right of the grantee "appurtenant to his lands," and "for the benefit of said lands," merely embodies the legal definition of an "appurtenance" to land given in section 662 of the Civil Code, making a

thing "appurtenant to land when it is by right used with the land for its benefit," and the expression "for the benefit of said lands" merely couples with the word "appurtenant" its legal definition.

ID.—COVENANT OF GRANTOR TO GRANTEE AND SUBSEQUENT OWNERS ONLY.—A covenant binding the grantor to the grantee and all subsequent owners of the land, "but to no other person or persons," does not at all have the effect to limit the grantee's use of the waters secured to him to his own lands exclusively, but is merely intended to prevent a transfer of the whole body of the water-right to any third person apart from a sale of the land.

ID.—RIGHTS OF GRANTOR NOT INFRINGED—ACTION BY GRANTEE TO DETERMINE RIGHT TO USE OF SURPLUS WATER.—No rights of the grantor were infringed by the disposition by the grantee of the surplus water flowing in his flume and ditch; and where the grantor has wrongfully interfered therewith, and claimed the right to sell all surplus water, the grantee may maintain an action to have his rights to dispose of the use of his own surplus water determined.

ID.—SPECIAL DAMAGES—INSUFFICIENT PROOF—LIMIT OF NEW TRIAL.—The grantee has the right to recover special damages arising from the interference by the grantor with the grantee's right of disposition of surplus water, if clearly proved; but it is held that the proof is insufficient to show the amount of special damages awarded, and that a new trial must be granted on that issue only.

APPEAL from a judgment of the Superior Court of Santa Clara County.  A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

W. P. Johnson, and E. E. Cothran, for Appellant.

Joseph H. Patton, for Respondent.

LORIGAN, J.—This appeal involves the question as to what extent plaintiff is entitled to control certain waters conveyed to him by defendant.

The record discloses the following facts:  In October, 1893, defendant was the owner  of a tract of land containing 247.37 acres, known as the "Sorosis Farm," bordering on the easterly side of Quito Creek, in Santa Clara County, and in that month built a dam across said creek and a diverting ditch upon its own lands, and thereby effectually diverted to its own lands, for the purpose of irrigating said "Sorosis

Farm," and also for the purpose of irrigating other lands in said county of Santa Clara owned by parties other than defendant, all the waters of said creek flowing therein ordinarily during all seasons of the year.

After such appropriation and diversion, and on July 22, 1896, defendant conveyed to plaintiff 40.37 acres of such "Sorosis Farm," and also the right to take from the said ditch of defendant, at the headgate thereof in said Quito Creek, so much of the water flowing therein to which defendant was entitled as should be represented by a fraction having for its numerator 40.37 and for its denominator 247.37 (about one sixth of said diverted water), together with the right to convey said water across lands of the defendant lying between the diverting ditch (which was on said land of defendant) and the lands conveyed to plaintiff.

Thereafter, and prior to January 16, 1902, the waters of said creek flowing in said ditch were applied to a beneficial use,—namely, the irrigation of the respective lands of the plaintiff and defendant, on  which there were growing and bearing orchards,—and for the purpose of the irrigation of other orchard land, both riparian and non-riparian to said stream.

Immediately prior to January 16, 1902, plaintiff and defendant, in concert, built in said irrigation ditch a receiving-box and two certain flumes of uniform depth but of different width, one box being six feet in width, the other thirteen and a half inches, the larger one being known as defendant's flume, the smaller one as plaintiff's flume, the waters from the latter flume being conducted onto the lands of plaintiff by the ditch then existing across defendant's lands and mentioned in the deed of July 22, 1896. By the construction of the smaller flume plaintiff received in his ditch and conveyed to his land a somewhat larger quantity than he was entitled to under his deed—about one fifth of the water instead of one sixth. After the receiving-box and flumes had been constructed, and on January 16, 1902, plaintiff and defendant entered into a written agreement which recited that plaintiff had a right to a certain portion of the waters that flowed in said main irrigation ditch, and a right of way to carry the same across defendant's lands to the lands of plaintiff, and that for the purpose of dividing, apportioning, and

setting apart to each other their respective quantity of the
volume of water which each was entitled to receive they had
constructed and built in said irrigation ditch the receiving-box
and flumes above referred to. By the agreement the parties
immediately conveyed to each other the right to receive and
use all the waters that might flow in their respective flumes,
with the additional right conferred on plaintiff to convey said
waters across said defendant's land to his own through the
then existing ditch which he had theretofore been using.
The agreement further provided for a payment by both
parties of a proportionate amount of the expenses of perma-
nently maintaining the main irrigation ditch from the dam
to the point of diversion of its waters between the parties,
with other provisions relative to said main irrigation ditch
unnecessary to state. The agreement then proceeded with
the following covenant: ''That all the interest, rights, es-
tate and privileges hereinabove described as passing or ac-
cruing to or vesting in the said party of the second part
[plaintiff], shall be deemed and treated as, and appurtenant
to and as a part and for the benefit of said lands of the party
of the second part hereinabove described, and that the party
of the first part [defendant] is bound by the terms of this
instrument to all subsequent owners of said land of the party
of the second part, as well as to the said party of the second
part, but to no other person or persons.''

From the execution of the agreement of January 16, 1902,
to April 19, 1902, plaintiff received water from said smaller
flume and conveyed it in the ditch across the land of de-
fendant to his own lands. About the latter date, plaintiff
finding that the water so conveyed to his lands was more than
sufficient to irrigate them, and that there was a surplus of
waters taken and received in his flume and ditch which he did
not require until a later period during the irrigation season,
sold and contracted to sell to his neighbors owning orchards
below the land of plaintiff, the use of said surplus waters,
for short periods of time and till he would again need them
for irrigation, and constructed ditches for that purpose.

On said April 19, 1902, defendant, asserting that plaintiff
could only use such waters on his own lands, and that when
not so being used defendant was entitled to take and use them,
dammed up plaintiff's flume and ditch and diverted from

plaintiff all the waters which should have flown to plaintiff's land therein, caused a portion thereof to be turned back into the Quito Creek, and diverted the remainder thereof for the purpose of selling the same to other persons.

Plaintiff thereupon commenced this action, praying, in effect, that it be adjudged that he had a right to sell and dispose of the surplus waters flowing or to flow from said main irrigating ditch through his flume and ditch upon his lands, and for special damages in the sum of four hundred and twenty dollars, sustained through the act of defendant in obstructing and diverting the flow of water through his flume and ditch and thereby preventing the sale by him thereof.

The court decided that since July 22, 1896, plaintiff had been and still is the owner of the water-rights, waters, and rights of way described in the deed of conveyance of that date, and on said January 16, 1902, was the owner of the waters, water-rights, and rights of way granted and conveyed to him by defendant by the agreement of that date; that plaintiff is entitled to use and appropriate said waters when conducted to his lands in such manner and for such purposes as he may deem proper, both in the irrigation of his land and selling the use thereof to others for the irrigation of their lands, and that plaintiff was specially damaged in the sum of four hundred and twenty dollars.

Judgment was accordingly entered for plaintiff, and from said judgment, accompanied by a bill of exceptions, this appeal is taken.

The main question in this case is to what extent plaintiff is entitled to control the waters taken to his land, over the lands of defendant from defendant's main irrigation ditch, under his conveyance from the latter.

Counsel have devoted much discussion to the terms of both the deed and agreement as bearing on this question. We see no reason, however, why any consideration of the deed need be had. The matter before us is not to what extent the plaintiff acquired a right to the waters conveyed by the deed or by the agreement, but whether the right which he was exercising, of selling the use of the surplus waters taken to his lands to his neighbors, was authorized under either. No question is involved here of a sale of the water-right which plaintiff acquired,—no question of a segregation of the right from the

land to which appellant claims it was an easement appurtenant, or any attempt to dispose of such right to others, to be used separate and apart from plaintiff's land and to his exclusion. What he has done, and what he claims the right to do, is to contract with his neighbors for the sale to them of the use of the surplus waters carried to his land, for limited periods of time. There was no sale made or attempted, and in effect what he was doing was to license the use of the waters to his neighbors for a rental during the period when he did not need them for the irrigation of his own land. If under the agreement this right was secured to him, it is immaterial whether it was also secured by the deed. And that it was secured by the agreement we think is not open to question.

Appellant's position is that the waters conveyed to the plaintiff's premises could be used only on the lands of the plaintiff and nowhere else; that the agreement did not convey the *corpus* of the waters, but merely an easement appurtenant, consisting of the right to the flow and use of them to irrigate his own land and no other. But upon inspection it will be seen that neither the covenant nor the agreement provides or says anything about using the waters on plaintiff's land for any purpose whatever, or at all. Plaintiff purchased a right to a given quantity of water to be received in his flume from the main irrigation ditch of defendant, and thence taken to his land. At the time of this agreement defendant had secured a prescriptive title to all of the waters of the Quito Creek, and as far as the parties to this agreement are concerned these waters were the private property of the defendant. (*Park C. and M. Co.* v. *Hoyt,* 57 Cal. 44.) Defendant had become as fully vested with the ownership in them as a person can be said to have acquired ownership in one of the natural elements, and the right which he conveyed to plaintiff was commensurate with the right which he had. Nor is there any merit in the claim that by the covenant in the agreement the water-right conveyed under it became an easement appurtenant to plaintiff's lands so that the use of the waters was limited exclusively to such land. No doubt by the covenant the water-right itself was made an easement appurtenant to the land. But we look in vain to the agreement or to this covenant to find anything limiting or restricting the use of the

water to the lands of plaintiff. It is not a case where by the very terms of the conveyance the right to use the water was expressly limited to lands to which the right was made appurtenant. Undoubtedly a grant of a water-right may restrict the use of the waters to particular lands for irrigation purposes, or for domestic uses, for the operation of a mill, or for the development of mechanical power, or for other specific and designated purposes, but no such restriction is found in either the agreement or this covenant. In fact, when we examine the covenant it is observed that what it was intended to effect, and did effect, was to make the water-right granted an easement appurtenant to the land and nothing more. It was not intended to, nor did it, create a limitation upon the use of the waters which plaintiff had purchased. The covenant, in as far as it applies to "rights" mentioned in it which were vested in the plaintiff, had relation only to the water-right, and made it "appurtenant to and as a part and for the benefit of said lands of the party of the first part." The effect of this language was simply to make the water-right an easement appurtenant to the lands which were already owned by the plaintiff. The term "for the benefit of said lands," used in connection with the word "appurtenant," did not limit or restrict, as is contended for by appellant, the use of the waters to the land of plaintiff in addition to making the water-right appurtenant to it. As defined by the code, a thing is "appurtenant to land when it is by right used with the land for its benefit." (Civ. Code, sec. 662.) And it is obvious that in using the terms in the covenant declaring that the water-right "shall . . . be deemed appurtenant to . . . and for the benefit of said lands," nothing more was meant by the expression "and for the benefit of said lands" than to couple with the word "appurtenant" its legal definition.

Nor does the further provision in the covenant binding the appellant, with reference to the water-rights conveyed, solely "to all subsequent owners of said land . . . and to the said party of the second part [plaintiff] but to no other person or persons" at all limit the use of the waters purchased by plaintiff to his own lands. Under the deed the grant of the water-right to plaintiff was not expressly made appurtenant to the land. As it was possible, therefore, that some question might arise as to whether the plaintiff might not have the

right to segregate the water-right conveyed by the deed and sell it independent of his land, providing that no different or additional burden was imposed upon the servitude than then existed, and no substantial alteration in the mode of using the easement resulted, it was intended by the subsequent agreement to avoid all question on that score. This was accomplished by in terms declaring in the covenant that the water-right should be not only appurtenant, but that it could not be conveyed unless by a conveyance of the land itself, and this was all that it was intended to accomplish. As the covenant relied on did not limit or restrain plaintiff as to the use of the water conveyed to him, and there is nothing anywhere else in the agreement which pretends to do so, we are satisfied that plaintiff had a legal right to temporarily dispose of the use of the water conveyed to his property as he saw fit, when he did not need it for his own use. As we have before said, the plaintiff has not and is not attempting to dispose of any water-right, but solely of the use for a limited period by his neighbors for irrigation purposes of waters which he owned, and to the entire use of which he was entitled, but which he then had no necessity to use. In so doing we do not see how he invaded any right of defendant, or what concern the latter has in the matter. Plaintiff is not wasting the water or applying it to other than a beneficial use. By the agreement plaintiff became entitled to one fifth in quantity of the waters of the main irrigation ditch, with a right to carry them to his own land. It is not pretended that he is taking out of the main irrigation ditch any greater quantity than he purchased, whether he used it on his own land or only used part of it there and disposed of the surplus. Appellant's position seems to be that because plaintiff does not need upon his own land all that he purchased and carried there, that it is entitled to the surplus or residuum, but as the sale to plaintiff was of a specified quantity of water, if any such right is available to defendant it must have been reserved in the agreement of conveyance, and we have seen that there was no such reservation. The grant to plaintiff of this water was not restrained by any limitations or conditions whatever. The right to the waters—the right to use them for beneficial purposes—was vested in plaintiff as a property right, and when the waters were conducted to his land and

CL Cal.—28

under his control he had the right as incident to his ownership of them to make such disposition of their use as he saw fit, limited, of course, to a beneficial use of them. As he had purchased the right to the use of all the waters conveyed from the irrigation ditch, he was entitled to an unrestricted control over that use. He was not limited by any contract with defendant upon the subject. He is not taking any more water than he purchased, and is not using himself or licensing to his neighbors more than he bought. Having purchased the use of a given quantity, if he cannot use it all himself, we see no reason why he cannot sell the right to a temporary use of it to his neighbors, as wanted, for a beneficial purpose. To hold that he cannot do so would be to impose a restriction for which no warrant is found in the agreement of purchase, and would be in effect to deprive him of a valuable incident 'to the ownership of this character of property, the right to dispose of its use to others when it is not required for use by the owner himself. There is no law which will impose the limitation contended for by appellant. As there is, then, nothing in the terms of the agreement or the covenant relied on limiting the use of the waters purchased by plaintiff to his own lands, or any rule of law that we are advised of so restricting him from disposing of such use, the conclusion reached by the lower court that plaintiff had a right to make such disposal of the waters purchased by him was correct.

As to the only other point in the case, the award of special damages. Appellant insists that the finding upon which the judgment therefor is based is not supported by the evidence. The evidence upon this subject is very meager, and consists of that of the plaintiff. He testified that between January 16, 1902, and April 19th of the same year, he was selling, or had contracted to sell, the waters to be used on his neighbors' lands; that under the contracts therefor he had negotiated for twenty-one days' sale of water at twenty dollars per day; and that the flume of plaintiff was obstructed by defendant on April 19, 1902. On this evidence the court made its finding of special damages in the sum of four hundred and twenty dollars. This finding is not sustained by the evidence. It was necessary in support of the claim for special damages that clear proof of them be made. All that the evidence shows is that plaintiff was selling water under contracts for twenty-

one days' use between January 16th and April 19, 1902. It does not appear when any of the contracts were made, or at what time the supply of water was to be furnished, or whether any of it had been furnished during the above dates. As the obstruction was not placed in the flume until April 19th, it does not appear how many days' use was had under the contracts between January 16, 1902, and the damming of plaintiff's flume, or whether the contracts were for the supply of water before April 19th or after. It cannot be said that there is any evidence of a definite character upon the subject of special damages.

The judgment, therefore, is reversed as to that portion of it which awards special damages, and a new trial is ordered to be had solely upon the issue of special damages. As to all the rest of the judgment, it is affirmed. Appellant is entitled to its costs on appeal.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.