[Civ. No. 5717. Fourth Dist. June 25, 1959.]

ORANGE COUNTY WATER DISTRICT (a Corporation), Respondent, v. CITY OF RIVERSIDE et al., Appellants.

Albert H. Ford and Leo A. Deegan, City Attorneys (Riverside), Harry M. Dougherty, Deputy City Attorney, Cosgrove, Cramer, Diether & Ringe, Leonard A. Diether, Gordon Pearce, William A. Flory, City Attorney (San Bernardino), Douglas L. Edmonds, DeWitt A. Higgs, James L. King, Martin C. Casey, City Attorney (Colton), and Edward F. Taylor, City Attorney (Redlands), for Appellants.

Best, Best & Krieger, James H. Krieger, Arthur L. Littleworth, Surr & Hellyer and John B. Surr as Amici Curiae on behalf of Appellants.

Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, A. W. Rutan, Milford W. Dahl, Rodger Howell, Pillsbury, Madison & Sutro, Eugene M. Prince, Eugene D. Bennett, James Michael and Samuel L. Wright for Respondent.

THE COURT.—The appellant city of San Bernardino, on June 2, 1959, filed what it describes as a "Petition for Modification and Clarification" of the writ of supersedeas granted by this court in the above-entitled action on October 10, 1957 (*Orange County Water Dist.* v. *City of Riverside*, 154 Cal.

App.2d 345 [316 P.2d 43]) "so as to provide that the City of San Bernardino is not prohibited, nor was it intended to be prohibited, from acquiring water for beneficial use of its inhabitants from mutual water companies with fixed and vested water rights, in excess of that which it was taking and diverting during the water year in which said judgment was entered." This defendant has also given notice that a motion would be made to the court accordingly, at a time and place specified in the notice. On June 12, 1959, the appellant city of Riverside gave notice that it would at the same time fixed for making the motion of the city of San Bernardino, make on its own behalf a motion (1) ——for "an order interpreting the writ of supersedeas herein to mean that, irrespective of the quantity of water that appellant City of Riverside itself takes or has taken from the watershed of the Santa Ana River during any water year, said city is not prohibited from acquiring water for domestic or reasonable beneficial uses from a corporation not a party to this action by virtue of stock ownership therein or otherwise, when said corporation itself takes and appropriates said water from said watershed and itself owns the right to take and appropriate said water. (2) ——In the event said writ of supersedeas is not so interpreted, for an order modifying or amending said writ in order that it may be so interpreted."

Respondent district has filed what it describes as a "demurrer and answer" to the San Bernardino petition.

The matter was brought on for hearing in due course, appearances were made for the respective parties, and the motions are now before us for decision.

The writ of supersedeas, as heretofore granted, suspends the enforcement of the judgment rendered in the action "and all proceedings in the trial court against appellants or any of them" and directs that "none of appellants shall be required to take any affirmative action required by said judgment, and said judgment shall be ineffective for any purpose until the final determination of the cause on appeal." It, however, and the order granting it, conclude with this proviso:

"Provided, however, that this court reserves jurisdiction to amend or modify its said order or this writ in the event that appellants or any of them take or divert water from the Santa Ana River System in excess of the amounts of water which they were taking and diverting in the water year in which said judgment was entered."

From the present San Bernardino petition and various affidavits and exhibits attached to it, it appears that a water year, as the term has been used in connection with the instant case, begins on October 1 of one year and ends with September 30 of the next; that during the current water year the rainfall in the San Bernardino Valley has been only 7.61 inches or about 45.4 per cent of the average, and that the winter and spring were unusually warm, besides which the population of the city has constantly increased; all resulting in the increased use of water. It further appears that in the water year in which the judgment was entered San Bernardino produced and used 21,393.93 acre feet of water of which 8,711.07 acre feet were used in the first seven months of that year, whereas in the first seven months of the current water year 10,433.69 acre feet have been used, whence it results that if the 21,393.93 limit were observed, there would remain only 10,960.24 for the last five months of the current year, which are always the months of highest water use; that during the last five months of the water year in which the judgment was entered the city used 12,682.86 acre feet and during the last five months of the water year 1957-1958 it used 13,023.39 acre feet; that it is estimated that, if the 21,393.93 acre feet limit is observed this year, there will be a water shortage for the remaining five months of the year of about 3,750 acre feet. All this, according to the city's petition and affidavit showing, is occurring despite all possible efforts by the city to conserve water. It is further stated that the city is expending large sums provided by a bond issue, in the effort more efficiently to make properly treated sewer effluent water available to increase the storage in the basin which forms the source of water supply. It is stated, however, that unless additional water can be secured the city of San Bernardino with an estimated present population of over 83,000 people will, for the latter part of the present water year, be wholly without water, thus threatening imminent disaster to its inhabitants, their property and the business and economy of the city. It is further stated that there is no source from which San Bernardino can at this time or within the current water year, obtain additional water, except by resorting to certain mutual water companies which have prescriptive appropriative rights, and from which, by leasing or purchasing their stock the city may, without in any manner increasing the production of water from the Santa Ana River System, obtain the additional supply of water presently re-

quired. The city is in doubt whether or not the language of the above-quoted proviso in the supersedeas writ prohibits it from obtaining and using water additional to what it is now allowed itself to take from the basin. For this reason it seeks such clarification or modification of the writ of supersedeas as will enable it, without violating the intent or purpose of the writ, to do so.

In its demurrer and answer to the San Bernardino petition and in its opposition to the motion made in behalf of that city, respondent district disputes the sufficiency of the petition, and affidavit showing made, to state or make out any ground for the interpretation asked of the language of the writ or for its modification to admit of such an interpretation. It is claimed that as a matter of law mutual water companies may not be used as a device to enable appellants as appropriators to take from the Santa Ana River System more water than their own prescriptive rights entitled them to take and that to allow them to do so would be to sanction new appropriations on their part. It is pointed out that appellants' claim of right to obtain further water through mutual water companies is one of the matters involved in the final disposition of the pending appeals, and it is claimed that it should not be dealt with until the appeals are dealt with in their entirety. Respondent district, moreover, disputes the sufficiency of the showing made to prove that the mutual water companies have any such appropriated water as is claimed to be available for use by appellants. It is claimed that, even if they have, its diversion to appellants' use would damage the water users of respondent district. It is further claimed that by neglect to obtain water from outside the Santa Ana River System appellants have failed to use such diligence as to entitle them to relief by this court from their present difficulties. Respondent district has also filed a memorandum of points and authorities in opposition to the motion of the city of Riverside.

At the hearing figures for the use of water by the city of San Bernardino for May, 1959, were produced which showed a water consumption for that month somewhat less than anticipated so that it now appears that if the 21,393.93 acre feet limit for that city for the current water year is observed, there will remain 10,913.97 acre feet available for the months of June, July, August and September, but that is still far short of the anticipated demand.

We cannot be otherwise than sensible of the seriousness of

the emergency shown to exist by the petition and supporting affidavit presented by the city of San Bernardino. Although no such affidavit showing has been made on behalf of the city of Riverside it is clear that if one of appellant cities is entitled to such interpretation or modification of the writ of supersedeas as it seeks, the rest are entitled to the same relief whether they ask it or have made any affidavit showing of emergency or not. Whether the mutual water companies from which the city of San Bernardino seeks to obtain additional water taken from the river system, have such water to which they are entitled under prescriptive rights is a matter into which we need not inquire. If they have, well and good. If they have not, then the city of San Bernardino obviously cannot obtain it from them. What we are here concerned with is whether or not, if they have it the city can properly be allowed to use it, in addition to what it is permitted itself to divert, pending the decision of the instant appeals, without substantial prejudice to the rights of respondent district and its water users. This is the essential inquiry involved by the motion of appellant city of San Bernardino and the answer to the same essential question must be decisive of the motion made by the city of Riverside.

It is with reluctance, of course, that in determining applications for pendente lite relief, we find it necessary to discuss at all matters involved in the ultimate determination of the appeals. But we may not decline to do so to the extent that they are necessarily involved in preserving so far as may be the rights of the parties *ad interim*. This will not preclude reexamination of such matters upon the final argument to whatever extent their reexamination may appear to be justified.

 It is undoubted law that a lawful appropriator of water may at his discretion alienate his right as such (*Spargur* v. *Heard*, 90 Cal. 221, 228, 229 [27 P. 198]; *Calkins* v. *Sorosis Fruit Co.*, 150 Cal. 426 [88 P. 1094]; *Copeland* v. *Fairview Land & Water Co.*, 165 Cal. 148, 166 [131 P. 119]; *E. Clemens Horst* v. *Tarr Mining Co.*, 174 Cal. 430, 433 [163 P. 492]; *Harrison* v. *Chaboya*, 198 Cal. 473 [245 P. 1087]; 25 Cal.Jur., tit. "Waters," § 209, p. 1198). It has often been held that an appropriator may at his discretion change the place of application of his water, though not where the change causes injury to those having superior rights (*Maeris* v. *Bick-*

*nell*, 7 Cal. 261, 263 [68 Am.Dec. 257]; *Davis* v. *Gale*, 32 Cal. 26 [91 Am.Dec. 554]; *Ramelli* v. *Irish*, 96 Cal. 214, 217 [31 P. 41]; *Jacob* v. *Lorenz*, 98 Cal. 332, 340 [33 P. 119]; *Gallaher* v. *Montecito etc. Co.*, 101 Cal. 242, 246 [35 P. 770]; *Santa Paula Water Works* v. *Peralta*, 113 Cal. 38, 45 [45 P. 168]; *City of San Bernardino* v. *City of Riverside*, 186 Cal. 7, 28, 29, [198 P. 784]). ■ It has likewise often been held that an appropriator of water may at his discretion change the use to which his water is put, provided it continues to be devoted to some legitimate beneficial use, and provided the change in its use does not injure those having superior rights (*Davis* v. *Gale, supra*; *Ramelli* v. *Irish, supra*; *City of San Bernardino* v. *City of Riverside, supra*; 26 Cal.Jur., tit. "Waters," § 379, p. 174). These decisions continue to state the law except as affected by subsequent statutes. Beginning with the State Water Commission Act of 1913 (Stats. 1913, ch. 586, pp. 1012 et seq.) several times amended and afterward superseded by subsequent legislation, the state has undertaken extensive regulation of water appropriation and the use of appropriated water. For the most part this legislation relates only to appropriation from surface water and subterranean *streams* and the use of the water appropriated therefrom as distinguished from appropriations from underground lakes or basins (State Wat. Code, §§ 1200, 1201). We do not deem this the proper time to inquire whether any legislation has affected the rights of appropriators from such underground lakes or basins to dispose as they like of water lawfully appropriated therefrom. We have the right to assume that, should appellant cities find duly appropriated water available for acquisition to augment their supplies, both the appropriators and appellants themselves will comply with any state requirements, if such there be, that may be needful to validate such transfers. In our view the proviso contained in our writ of supersedeas should not in itself operate to deprive appellant cities of any legal right that they may have to obtain water already appropriated from other agencies unless their doing so pending the present appeals will work some substantial injury to the respondent district and its water users.

We do not feel it incumbent on us, in the present exigency, to enter upon any inquiry as to the degree of diligence or lack of diligence that appellants may have shown in seeking water from sources outside the watershed of the Santa Ana River.

■ We confine ourselves, then, to the inquiry whether from the relief now sought any reasonable probability of injury to respondent's water users can ensue. Such injury could only result from (1) a diminution of the water supply affecting lands within respondent district or (2) from increased pollution of such water supply.

It must be kept in mind, as we have repeatedly noted, that in securing the additional water sought there is involved no suggestion of drawing any additional water from the river system. The result is sought to be accomplished only by using waters already validly appropriated by a change in the locality and nature of their use. The only diminution then that could result in the downstream water supply would be merely that which might be produced, not by any increased diversion of water, but by these changes alone. It is true that, in its finding XVII, the trial court found that the change in the use of water from agricultural to domestic, municipal and industrial purposes in "paved and other impervious areas" has resulted in no saving of water, but that the effect has been the contrary. Inevitably consumptive use of either sort will result in some diminuation of the available supply. The return flow from irrigation, in consequence of evaporation and plant transpiration will always be less than the quantities spread upon the soil. On the other hand in the case of domestic and industrial uses in urban areas the return flows will be discharged into the stream system either through the urban storm drain system or in the form of sewage. In the one case it is possible, as here found by the trial court, that the loss from evaporation may be greater than in the irrigation of agricultural lands. In so far as sewage is concerned, however, evaporation losses can hardly be otherwise than negligible. In the finding just referred to no attempt has been made to determine by what percentage the loss in return flow is greater in urban than in agricultural areas. It is questionable here whether the difference can be very considerable. In the instant case it would be difficult to believe that in the relatively short period before these appeals can be finally determined the difference in such return flows, from changing the use of the quantities of additional water sought, from agricultural to urban uses, would be sufficient to appreciably impair the water supply within the respondent district, particularly when it is considered that such losses in return flows,

if any, would be spread over the period required for water from the upper basin of the river system to reach the land within the district.

As respects the other question of pollution of the water supply on which the district inhabitants depend in case the relief now sought is granted, we have even less apprehension. Such pollution, if any, is already occurring. The natural effect of pouring more water into the mains of appellant cities would seem to be to dilute rather than increase any pollution.

All in all we are satisfied that the relief sought in behalf of defendant cities will result in no appreciable damage, —— certainly in no irreparable damage to respondent or its water users.

It is ordered that there be and there are hereby added to the writ of supersedeas heretofore issued the following paragraphs:

"Should appellants or any of them, obtain additional water from the Santa Ana River System from mutual water companies or other agencies having prescriptive rights to take the same, as appropriators, such acquisition of water shall not be deemed a taking by such appellant or appellants of excess water, within the meaning of this proviso, if such acquisition of additional water from such mutual water companies or other agencies does not increase the taking from the system, by such mutual water companies or other agencies, or any of them, beyond the amounts which they, respectively, are by prescription entitled to take therefrom.

"Nothing herein contained shall be construed to sanction increased drafts from the Santa Ana River System by any mutual water company or other agency from which appellants or any of them may obtain water.

"Jurisdiction, in addition to that hereinbefore specifically reserved, is reserved generally to hereafter make any modifications or changes in this order or the writ of supersedeas that may appear to be justified."