[Civ. No. 20396. First Dist., Div. Two. Oct. 29, 1962.]

THE DUNCANSON-HARRELSON COMPANY, Plaintiff and Respondent, v. THE TRAVELERS INDEMNITY COMPANY, Defendant and Appellant.

Tinning & DeLap, Dana Murdock, and Robert N. Sanford, Jr., for Defendant and Appellant.

Boekel, Moran & Morris and Emory L. Morris for Plaintiff and Respondent.

AGEE, J.—In May 1958, the Central Contra Costa Sanitary District awarded to M. Miller Company a contract for the construction of a portion of an outfall sewer designed to empty into Suisun Bay. Defendant was the surety on Miller's public works bond. (Gov. Code, §§ 4200, 4204.) Plaintiff recovered a money judgment upon the bond and defendant has appealed.

On September 3, 1958, respondent subcontracted with Miller to do some of the work called for under Miller's contract. This work was completed by November 3, 1958. Respondent was allowed $9,017.10 by the trial court for said work, and this portion of the judgment is not an issue on this appeal.

Soon after the making of the foregoing subcontract, respondent agreed to and did furnish Miller with steel sheet piling, together with pile driving equipment, to be used by Miller in the performance of its contract. The material and equipment so furnished are set forth in Miller's purchase orders No. 9898, undated, No. 9900, dated October 13, 1958, and No. 9904, dated October 17, 1958. The agreed monthly rental charge for the piling, based upon the tonnage furnished, was specified therein, as was a charge of 8 cents per pound for "spoilage," i.e., sheet piling not returned or returned in such a damaged condition that it was not re-usable.

The rental period terminated June 10, 1960. The trial court allowed $24,613.38 for rental and "spoilage." The correctness of this amount was arrived at by stipulation and the necessity of producing the invoices and supporting data was dispensed with.

The principal issue on appeal is whether respondent was required to comply with the notice provision in section 4209 of the Government Code in order to have a right of action against the surety upon the bond. The section was enacted in 1959 and became effective September 18, 1959. (Stats. 1959, ch. 1594, § 1.) The enacting statute expressly provided that it was not retroactive. (Stats. 1959, ch. 1594, § 2.)

In recognition of the effective date of the section, appellant states that its appeal is "from that portion of the judgment in the trial Court awarding damages to respondent for the furnishing of materials to appellant's principal, . . . *after September 18, 1959.*" (Emphasis ours.)

Appellant further states: "Appellant concedes that Section 4209 does not apply to the furnishing of materials prior to September 18, 1959, by respondent. . . . [but] It would seem

clear that Government Code Section 4209 would apply to all materials furnished by respondent to Miller after September 18, 1959.''

Appellant contends that, because the charge for the use of the pilings was on a monthly basis, each month is to be considered as a new and separate ''furnishing of materials.'' We do not agree. Respondent correctly points out that no materials or labor were furnished by it after *October 1958*, by which time all of the pilings had been delivered by respondent to the jobsite. The judgment should be affirmed on this ground alone.

However, with the passage of time since the effective date of section 4209, it is unlikely that this particular contention will ever again be presented to us. Therefore, we think it is proper to discuss the principal issue on this appeal, as stated above, because it may arise again.

Section 4209 provides: ''In any case in which the law of this State requires that a contractor for construction of a public work file a payment bond, every person to whose benefit the bond inures who has not been paid in full, other than a person who performs actual labor for wages, and who has no direct contractual relationship with the contractor furnishing said bond shall have a right of action upon the bond only upon having given written notice to said contractor within 90 days from the date on which such person furnished the last of the labor or materials for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the labor or materials were furnished. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or by personal service.''

Appellant contends that this section should be so interpreted as to arrive at the following result: ''In other words, persons who perform actual labor for wages and persons who are not in a direct contractual relationship with the contractor are given no direct right of action upon the prime contractor's payment bond. Only those persons who have a direct contract with the contractor are given a direct right of action upon the payment bond and then only if they comply with the notice requirements of Section 4209.'' We do not agree with this interpretation.

 *Does Section 4209 Require Respondent To Give*

*Notice To The Contractor As a Condition Precedent To Maintaining a Direct Cause of Action Against the Surety?*

For the purpose of clarification, the clause in section 4209, "other than a person who performs actual labor for wages," should be eliminated from our discussion of this issue, since respondent is obviously not such a person. The clause is set off from the rest of the main sentence by commas and should be read as a parenthetical clause. It clearly indicates an intent to segregate this clause from the rest of the sentence. ▉ While not controlling, punctuation is to be considered in the interpretation of a statute. (45 Cal.Jur.2d, Statutes, § 154, "Punctuation"; *Estate of Coffee,* 19 Cal.2d 248, 251 [120 P.2d 661].)

If it were not for this exclusionary clause, a person "who performs actual labor for wages" *but* who does not have a direct contractual relationship with the general contractor would be required to give the notice in question. This result would obviously be contrary to the express wording of the statute.

▉ Deleting this clause for the sole purpose of the instant case, the pertinent provision of section 4209 would then read: " [E]very person to whose benefit the bond inures who has not been paid in full, *and* who has no direct contractual relationship with the contractor furnishing said bond shall have a right of action upon the bond *only* upon having given written notice to said contractor . . ." (emphasis ours).

While respondent comes within the first category, it does not come within the second, since it is not disputed that respondent *did* have a direct contractual relationship with Miller. We therefore conclude that respondent was not burdened with the notice requirement imposed by section 4209.

It may be noted that section 4210 of the Government Code provides as follows: "In any case in which the law of this State affords a right to a person furnishing labor or materials for a public work who has not been paid therefor to file a stop notice with the public agency concerned and thereby cause the withholding of payment from the contractor for the public work, *any such person having no direct contractual relationship with the contractor, other than a person who performed actual labor for wages,* may file such a notice, but no payment shall be withheld from any such contractor pursuant to any such notice, unless such person has given written

notice to said contractor and the public agency concerned within 90 days . . .'' (emphasis ours).

The similarity in the wording of these two statutes is of significance. Both were enacted into law in the same act. (Stats. 1959, ch. 1594.) ■ They are essentially notice statutes which grant different remedies to a person who has no direct contractual relationship with the contractor on a public works project. Each is conditioned by notice requirements in order to protect the contractors from so-called ''secret liens'' arising under work and materials furnished by subcontractors. Each contains the exclusionary clause, ''other than a person who performed [or performs] actual labor for wages,'' which clause is set off by commas, leaving the notice requirement applicable to all others ''having no direct contractual relationship with the contractor.''

In comparing section 4210 with section 1193, subdivision (a) of the Code of Civil Procedure, also enacted in 1959 (Stats. 1959, ch. 2034), the Attorney General of California opined: ''Similarly to Government Code section 4210, persons having a direct contractual relationship with the owner or those performing actual labor are excepted from the notice requirements. As respects these exceptions, the Legislature apparently felt there existed no need for such preliminary notification either because the owner would already have cognizance of such potential claims or for other reasons.'' (35 Ops. Cal. Atty. Gen. 136, 139.)

Section 1193 subdivision (a) of the Code of Civil Procedure provides: ''*Except one under direct contract with the owner or one performing actual labor for wages,* every person who furnishes labor, service, equipment or material for which a lien otherwise can be claimed under this chapter, must, as a necessary prerequisite to the validity of any claim of lien subsequently filed, cause to be given not later than 15 days prior to the filing of a claim of lien a written notice as prescribed by this section, to the owner or reputed owner and to the original contractor.'' (Emphasis ours.)

The foregoing section, of course, deals with mechanics' liens on real property arising under private construction contracts, but the interpretation of the italicized clause, as quoted above, is of assistance herein. In *Alta Bldg. Material Co.* v. *Cameron* (April 11, 1962) 202 Cal.App.2d 299 [20 Cal.Rptr. 713], it was said, at page 304: ''The section does not require a prelien notice by those under direct contract with the owner or

those who perform actual labor for wages on the property. The logical reason for this distinction is that the owner would in the usual situation be apprised of potential claims by way of lien in connection with those with whom he contracts directly, as well as those who perform actual labor for wages upon the property.

"However, as to materials furnished or labor *supplied* by persons not under direct contract with the owner, it may be difficult, if not impossible, for the owner to be so apprised . . ."

If the word "owner," as used above, is changed to "contractor," as used in section 4209 of the Government Code, the same principle is presented and the same reasoning applies.

Appellant places significance on a notice sent out by respondent's counsel, dated June 13, 1960, in compliance with the notice provision of section 4209, contending that this demonstrates that respondent itself believed that it was required to do so. However, the covering letter makes no such admission. It states: "In the light of the 1959 enactments to the California Government Code and the California Code of Civil Procedure relating directly or indirectly to claims of a subcontractor furnisher of materials and labor upon a public works contract we, as counsel for The Duncanson-Harrelson Co., have concluded that, *in excess of precaution,* the enclosed notice should be served upon each addressee thereof." (Emphasis ours.)

There being no appellate court decision on the precise question at the time the notice was sent, it was commendable of respondent's counsel to exercise such "excess of precaution." This, however, does not affect the holding herein that respondent was not required to give such notice and it is immaterial whether the notice that was given was or was not timely.

In support of its contention that the notice came too late, appellant relies upon testimony that the district had declared Miller to be in default and had terminated its contract on March 3, 1960. The notice of June 13, 1960, was given more than 90 days after Miller had ceased work. The project was completed by another contractor, but, according to the testimony of Miller's accountant, the district agreed to pay all rentals on the sheet piling until such completion. As stated before, the rental period ended June 10, 1960.

The foregoing gives rise to the second point made by appel-

lant in its opening brief. As far as we can determine from the record, this point was never presented to the trial court. Appellant now states: "Neither appellant nor Miller is liable for any charges incurred after March 3, 1960. Particularly is this true in view of the express contract between Miller and the District that the latter would assume all liabilty for rental charges incurred for steel sheet piling after March 3, 1960. . . . Miller did not and in fact could not rent any steel sheet piling from respondent*s* [*sic*] after March 3, 1960, and the award of damages for monthly rentals between March 3, 1960, and June 10, 1960, was clearly erroneous."

Appellant's contention is unsound. The agreement between respondent and Miller called for delivery of the sheet piling to Miller by respondent, to be used for the period required to complete the work called for under Miller's contract with the district. The rental charge was agreed upon at a monthly rate to be computed upon the basis of the tonnage furnished. The piling was in fact used until the completion of the project. No complaint is made as to the termination date of June 10, 1960. Appellant does not deny that respondent is entitled to rental for the period from March 3, 1960, to June 10, 1960. It simply says that Miller does not owe it but the district does, under its agreement with Miller.

Respondent's position is that it entrusted the piling to Miller, as a bailee, and that it was the absolute duty of Miller, to redeliver the piling upon the termination of the bailment. (1 Witkin, Summary of California Law, p. 826.) Respondent has not elected to treat Miller's unauthorized reletting of the piling as a conversion, but rather as a continuation of the bailment. Respondent's agreement was with Miller, not with the district or the contractor who replaced Miller. Respondent was not a party to the agreement of the district to pay the rental charges accruing after March 3, 1960, and it is not bound to look only to the district for its rent.

What appellant is really contending for is a novation. The Civil Code, section 1530, defines this as the "substitution of a new obligation for an existing one." ▪ An essential element of a novation is the agreement of all of the parties to the new contract. (36 Cal.Jur.2d 427, Novation, § 3.) This is completely lacking herein.

▪ Nowhere in the record is there any evidence, nor does appellant assert in its briefs, that respondent was a party

to the alleged agreement of March 3, 1960, between the district and Miller. If the district did assume Miller's obligations under the rental agreement, this is a matter between those parties, and Miller would have to look to the district for redress. There being no valid novation, the rental agreement would still be controlling as between Miller and respondent.

What we have said about Miller's continuance of the hiring agreement with the district may also be in point as to whether the notice of June 13, 1960, comes within 90 days after the last materials were furnished to the contractor. If Miller purported to relet the piling to the district, then, so far as respondent was concerned, the piling was material which was still being furnished by respondent to Miller for use on the job.

Appellant raises an entirely new point in its reply brief. This point is that the bond only covered materials that were *used by its principal* (Miller) on the job and that, because Miller ceased its use of the piling after March 3, 1960, appellant is not liable on the bond for the use of the piling thereafter by the district or the contractor who succeeded Miller.

Thus, appellant attempts to distinguish its liability under the bond from any independent liability which Miller, as bailee, had by reason of its alleged agreement with the district to leave the piling until the job was completed.

We are not required to consider the point. It is well settled that a point raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present such point before. (3 Witkin, California Procedure, pp. 2341-2342, Appeal, § 155; *Monk* v. *Ehret* (1923) 192 Cal. 186, 190 [219 P. 452]; *Richard* v. *Richard* (1954) 123 Cal.App.2d 900, 903 [267 P.2d 867]; *Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 207 [319 P.2d 426]; 4 Cal.Jur.2d 324, Appeal and Error, § 488.)

No reason has been shown for the withholding of this point until the closing brief. Respondent was not apprised of it either during the trial or in appellant's opening brief and has not had an opportunity to answer or defend against it.

As stated in Witkin, *supra*, at page 2341: "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission."

We also have in mind that this point was never raised in

the pleadings or in the written stipulation, signed by respective counsel, setting forth "the *only* issues of this case." The "Pre-Trial Conference Order" is in accord with this stipulation and, in the "Issues" set forth therein, no mention is made of the contention now under discussion.

What appellant termed, in its opening brief, as an "express contract between Miller and the District that the latter would assume all liability for rental charges incurred for sheet steel piling after March 3, 1960," may well have been the subject of cross-examination by respondent as to the terms of this alleged "express contract." As it was, no attention at all was paid to the matter during the trial.

Certainly, the leaving of the piling to be used on the job until completion would reduce the damage caused to the district by Miller's default in the performance of its contract, and it may well have been that appellant, as Miller's surety, consented to this arrangement and agreed to treat it as an "alteration or addition" to the contractual obligation of Miller to furnish the materials necessary to do the work provided for in its contract with the district. The clause in the bond which would be involved, in such an event, provides as follows: "And the said Surety . . . hereby stipulates . . . that no change, extension of time, alteration or addition to the terms of the contract or to the work to be performed thereunder . . . shall in any wise affect its obligations on this bond, . . ."

We do not have the Miller-district contract before us nor do we have the alleged "express contract" relating to the assignment or transfer to the district of Miller's rights, as bailee, to the use of the piling until completion of the job. Our purpose in stating the hypothetical situation described above is merely to demonstrate the unfairness to respondent of raising a point for the first time in appellant's closing brief.

Moreover, the point is without merit. The bond provides as follows: "The condition of this obligation is such, that if said Principal [Miller], . . . shall fail to pay for any materials . . . used in, upon, for, or about the performance of the work contracted to be done, . . . then said Surety [appellant] will pay the same . . ."

The piling was material admittedly used in, upon and about the performance of the work contracted to be done by Miller. Miller became the bailee of this material upon its

delivery by respondent. The agreement with respondent called for a fixed monthly charge during the period of the bailment.

It is fundamental that a bailment is not terminated until the goods are redelivered to the bailor. (1 Witkin, Summary of California Law, p. 826, Personal Property, § 65.)

The piling was not redelivered to respondent until after June 10, 1960. Hence, Miller was liable for the agreed monthly rental charge from October 1958, to June 10, 1960. During this period it had actual or constructive possession of the piling as the bailee thereof.

Whether Miller left the piling in place until its successor completed the project or pulled it out and stored it in a warehouse (as some of it apparently was) has no effect on appellant's liability under the terms of its bond.

The piling comes squarely within the clause imposing liability under the bond for "materials . . . used in, upon, for, or about the performance of the work contracted to be done, . . ."

Assuming, without deciding, that the bond only covers work done by Miller under its contract, the fact remains that the period for which it was required to pay respondent for the use of the piling did not terminate on March 3, 1960, but continued until the redelivery of the piling to respondent. Hence, Miller comes within the description contained in the bond of a principal who has failed to pay for materials used in, upon and about the performance of the work contracted to be done by the principal.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.