[Civ. No. 21087. First Dist., Div. Two. July 22, 1963.]

UNITED LIQUORS, INC., Plaintiff and Appellant, v. THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Defendants and Respondents.

---

*Assigned by Chairman of Judicial Council.

David Krinsky and J. Bruce Fratis for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Roderic Duncan and L. Stephen Porter, Deputy Attorneys General, for Defendants and Respondents.

SHOEMAKER, J.—On October 19, 1960, the Department of Alcoholic Beverage Control filed an accusation in two counts against United Liquors, Inc., the possessor of a general off-sale liquor license. Count I charged violations of Business and Professions Code, section 24755, and rule 99(f) of the department's rules (Cal. Admin. Code, tit. 4), in that said licensee had, on October 5, 1960, sold two brands of alcoholic beverages at retail at prices less than the minimum resale price provided for in fair trade contracts duly filed with the department. Count II charged a violation of rule 17(e) of the department's rules in that said licensee had, on the same date, delivered these beverages to a consumer without an accompanying delivery order.

On March 29, 1961, a hearing was duly held before a hearing officer of the department. A special investigator for the department testified he had visited the licensed premises on the date in question and had asked the clerk on duty whether he was entitled to any special discount as a Kaiser Employee Club member. When the clerk requested identification, he produced a club membership card. He also informed the clerk that he could not afford to make a purchase at the normal posted prices for liquor patrons. After a discussion about the prices of various brands of whisky, the clerk agreed to sell him six fifths of White Horse Scotch and six fifths of Old Crow bourbon for $57.25. The clerk stated that he could not give him as large a discount for the Scotch as for the bourbon, but that the discount on the entire case would amount to approximately 25 per cent. The investigator paid for his purchase with a blank check signed by his wife. He then asked the clerk to deliver the whisky and to provide him with an invoice or receipt of some kind. The clerk subsequently made the delivery but said that the only receipt he could provide was the cash register tape.

In addition to the testimony above summarized, the department introduced into evidence certified copies of fair trade contracts and minimum fair trade price schedules which had been duly filed with the department and which provided that the minimum resale price for Old Crow bourbon was $4.99 per fifth, and the minimum resale price for White Horse Scotch was $6.55 per fifth.

The assistant area administrator of the department testified that both of the brands of liquor purchased by the investigator were in open competition with other brands in the same general class, and he named several of the other brands and stated that these brands were available for sale in most retail stores, and were similar in quality, price, taste and public acceptance to White Horse Scotch and Old Crow bourbon.

The hearing officer found the licensee guilty of each of the violations charged in the accusation, and recommended that its license be suspended for 15 days as a penalty for the violations charged in count I, and five days for the violation charged in count II. The penalties were to run concurrently. The department adopted the proposed decision of the hearing officer in its entirety. Upon appeal by the licensee to the Alcoholic Beverage Control Appeals Board, the decision of the department was affirmed. The licensee then petitioned the trial court for a peremptory writ of mandate commanding the department to vacate and set aside its decision. From the judgment denying this writ, the licensee now appeals. ·

Appellant raises three contentions: (1) that there was no competent evidence in support of a finding that the alcoholic beverages subject of the accusation were in fair and open competition; (2) that the department in any event, made no finding to that effect; and (3) that the evidence established the defense of entrapment as a matter of law.

In view of the recent decision in *DeMartini* v. *Department of Alcoholic Beverage Control* (May 1963) 215 Cal. App.2d 787 [30 Cal.Rptr. 668], appellant's first two contentions may be disposed of summarily. Therein the court held that certified copies of fair trade contracts and fair trade contract price schedules which had been duly filed with the Department of Alcoholic Beverage Control and which covered the brands in question were in themselves sufficient to support a finding that the products were in fair and open competition.

The court also rejected the contention that the de-

partment was required to make an express finding that the alcoholic beverages subject of the accusation were in fair and open competition. The court, in so holding, pointed out that the department was entitled, pursuant to Government Code, section 11518, to state its findings in the language of the pleadings. Since the accusation made no reference to fair and open competition but merely charged the licensees with selling alcoholic beverages " 'at a price less than the stipulated minimum resale price provided for in a fair trade contract duly filed with the Department . . .' " (p. 813) a finding to the same effect was clearly sufficient to apprise the licensees of the reason for the action taken against them. Furthermore, a finding that the alcoholic beverages were in fair and open competition could reasonably be implied from the finding that the fair trade contracts had been duly filed with the department (p. 814).

There is similarly no merit to appellant's contention that the findings made by the hearing officer and adopted by the department were in any way deficient. The department made an express finding, in the language of the accusation, that appellant sold specified alcoholic beverages "at a price less than the stipulated minimum resale price provided for in Fair Trade Contracts duly filed with the Department . . . ."

■ Appellant's sole remaining contention is that the evidence established entrapment as a matter of law. This contention is wholly without merit. Since administrative hearings are not penal in nature (*Harris* v. *Alcoholic Beverage etc. Appeals Board* (1961) 197 Cal.App.2d 182, 185-186 [17 Cal. Rptr. 167]) and are not governed by the theories developed in the field of criminal law (*Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 537-539 [110 P.2d 992]), it is at least open to question whether entrapment was a proper defense to the instant proceeding. Assuming, however, that entrapment was an appropriate defense, the evidence falls far short of establishing it as a matter of law.

■ In order to establish entrapment, the evidence must show some persuasion or inducement outside the ordinary transaction between a willing seller and buyer. (*People* v. *Makovsky* (1935) 3 Cal.2d 366, 369-370 [44 P.2d 536].) ■ ■ The mere furnishing of an opportunity to commit a criminal offense does not constitute entrapment (*People* v. *Neal* (1953) 120 Cal.App.2d 329, 332-333 [261 P.2d 13]), and it is of no import that the purchasers of illegal merchandise are in the employ of a law enforcement agency and use

money obtained from that source. (*People* v. *Norcross* (1925) 71 Cal.App. 2, 8 [234 P. 438].) Thus, the crucial test is whether the intent to commit the offense originated in the mind of the defendant or in the mind of the entrapping officer. (*People* v. *Benford* (1959) 53 Cal.2d 1, 10 [345 P.2d 928].) In the recent case of *People* v. *Sweeney* (1960) 55 Cal. 2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049], the court stated that entrapment was shown as a matter of law only where the evidence established that the accused was induced by the officer to commit a crime which he would not otherwise have committed and where there was no substantial evidence that the criminal intent to commit the particular offense originated in the mind of the accused.

 There is no evidence that the agent wrongfully induced appellant's clerk to commit an offense which he would not otherwise have committed. To the contrary, the clerk's readiness to complete the sale was in itself evidence that he was predisposed to enter into such a transaction. (*People* v. *Benford, supra,* at p. 12.) Neither is there any merit to the argument that the agent was guilty of entrapment because he falsely represented himself to be a member of the Kaiser Employee Club. Appellant would have been equally guilty of the violations charged even if the agent had in fact belonged to that organization.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.