[Civ. No. 30951. Second Dist., Div. One. Sept. 5, 1967.]

WILLIAM LLOYD SHAKIN, M.D., Plaintiff and Appellant, v. BOARD OF MEDICAL EXAMINERS, Defendant and Respondent.

Marks & Schneider and Burton Marks for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Henry Lewin, Deputy Attorney General, for Defendant and Respondent.

FOURT, J.—This is an appeal from a judgment denying Doctor William Shakin's petition for a writ of mandate directing the Board of Medical Examiners of the State of California (hereinafter sometimes referred to as the Board) to vacate and annul its order revoking the doctor's license to practice medicine and surgery in the State of California and to reinstate said license.

On January 29, 1965, an accusation was filed by the executive secretary of the Board charging appellant with unprofessional conduct as grounds for disciplinary action. The accusation, in substance, charged the doctor with (a) conviction of a felony, the violation of a state statute regulating narcotics; (b) using narcotics and dangerous drugs—regulated by statute—to the extent and in such manner as to be dangerous to himself and to the public; (c) selling similar narcotics, without making a record of the sales, to a male addict who was not a patient and did not receive them in the regular course of the doctor's practice; (d) prescribing, furnishing and administering to himself morphine, a narcotic drug regulated by statute.

The doctor filed a notice of defense, requesting a hearing, and on March 2, 1965, he appeared without counsel before the Board and a hearing officer. Because it appeared that the doctor had misunderstood the nature of the proceeding and his right to counsel, the Board, after hearing both oral and documentary evidence in support of the charges, voted to continue the matter and to assign the case to a hearing officer. Accordingly, on June 28, 1965, a new hearing was held before a different hearing officer, and on that occasion the doctor appeared in person and with counsel. On or about July 8, 1965, the hearing officer filed with the Board his proposed decision, which the Board, on July 23, 1965, adopted as its decision to become effective on August 23, 1965. That decision provided that "The certificate to practice medicine and surgery in the State of California heretofore issued to respondent William Lloyd Shakin, M.D. is hereby revoked on each cause for disciplinary action established."

On August 23, 1965, the doctor filed in the Los Angeles Superior Court a petition for writ of mandate (Code Civ. Proc., § 1094.5) to compel the reinstatement of his license and on January 28, 1966, filed an amendment to his petition adding a second cause of action and raising for the first time the affirmative defense of entrapment. At the hearing on March 25, 1966, the court admitted into evidence the transcripts and exhibits of the administrative hearings but denied appellant's motion to reopen the case and to present additional evidence on entrapment. On May 27, 1966, the court rendered its order and memorandum of decision denying appellant's petition and on August 16, 1966, rendered its judgment, including findings of fact and conclusions of law.

Appellant makes numerous contentions. He first claims that the trial court erred in finding the administrative proceedings regular in the light of the following alleged defects: (a) the administrative hearing did not conform to Administrative Procedure Act requirements (Gov. Code, § 11517); (b) appellant was denied due process because he had no opportunity to present, and the Board wilfully suppressed, evidence of entrapment; (c) appellant was denied the right to cross-examine the officer who filed the police report and testified at the March 2d hearing; (d) the Board based its decision on ex parte evidence, i.e., the officer's testimony at the March 2d hearing; (e) appellant's extrajudicial admissions were used as the basis of the Board's decision in violation of his constitutional rights; and (f) appellant's admissions were allowed to prove the corpus delicti of certain charges. In addition, appellant contends that it was error for the trial court to refuse to receive evidence of entrapment, that the court's findings of fact were unsupported by competent evidence, and that the court should have remanded the case to the Board for reconsideration of the penalty. Each of appellant's contentions is without merit.

At his first hearing on March 2, 1965, appellant appeared in person and without counsel before the Board in open session. At that time he was advised that he had the right to have an attorney, to cross-examine any witnesses called to testify against him, and to offer evidence on his own behalf. In support of the charge concerning the doctor's earlier narcotics conviction, a certified copy of the judgment, the probation officer's report, and psychiatric evaluations by two doctors were received in evidence. With respect to the charge that

appellant sold and did not record the sales of narcotics to an addict, the testimony of Officer Booth Shaw was received. He testified, in substance, that he met the doctor in Gardena and they then discussed their use of narcotics; at the officer's request appellant on several occasions thereafter sold him narcotics. He further testified in some detail to conversations in which appellant had related facts concerning his own use of drugs. Following this testimony appellant requested a continance to obtain an attorney on the grounds that he had not understood that evidence would be presented to prove the charge of self-use of narcotics and dangerous drugs. He made no attempt to cross-examine the witness. Although appellant subsequently withdrew his request, the Board voted to continue the matter and assign it to a hearing officer.

On June 28, 1965, the second hearing was held before a hearing officer of the Office of Administrative Procedure, appellant appearing with counsel. At that time counsel for appellant entered a stipulation with the Board whereby the doctor admitted as true his conviction of the felony sale of narcotics; his personal use of narcotics and dangerous drugs for a one-year period ending on or about August 1962; that on or about January 1964, he did self-prescribe and administer morphine and Demerol; and that he sold narcotics to an addict outside the regular conduct of his profession and without making records of such sales. Following the acceptance of this stipulation the Board's attorney rested, reserving the right to call appellant to the stand.

The doctor then introduced the testimony of a psychiatrist who originally had been contacted to render an opinion with respect to appellant's probation and sentence hearing in superior court following his narcotics conviction. The psychiatrist testified that appellant regularly had used large doses of narcotics since the age of 17, but that he believed appellant had taken none since the latter part of 1964. At this hearing a probation officer also testified, based upon his report, that appellant's problem was principally medical rather than criminal.

Appellant, who testified in his own behalf, said that he received his D.O. degree from the College of Osteopathic Physicians and Surgeons in Los Angeles in 1956 and in 1962 received his M.D. degree because of the amalgamation of these disciplines under the law. After a one-year internship, he opened his own office where he practiced until August 1962. He separated from his wife in late 1961 and thereafter

sought psychiatric help because his personality was disintegrating and he was taking many vacations from his practice. He had begun to take narcotics on his own prescription to enhance his sexual relations with his wife, and he continued this practice while he was under psychiatric treatment. Finally, he became a patient in a mental hospital and a conservator was appointed for his estate who closed his office, collected his disability insurance and made support payments therefrom to his wife and two children. Although his license, which had been suspended during his illness, was restored in September 1963, he had lost his incentive and lived as a recluse in an apartment in Hollywood until approximately November 1964, without resuming the practice of medicine. He spent his time gambling in Gardena card parlors, and when he ran out of money he spent his time in the bowling alley where he met Officer Shaw.

Appellant first sold narcotics to Officer Shaw because he was completely broke and needed the money for daily living. Although he admitted that to dispense narcotics to an addict or a former addict is not good medical practice, he sold narcotics to Officer Shaw, believing him to be a former addict who was cured and wanted narcotics for his addicted wife. He also occasionally self-administered narcotics, however, and he admitted recognizing similar hypodermic marks on the arms and hands of Officer Shaw which would indicate that he might be a current user. Confronted with statements he purportedly made to Officer Shaw concerning his own use of narcotic drugs, appellant testified in self-defense that he had told the officer many untrue facts because he wished to appear to be ''one of the boys'' in order to avoid suspicion in the course of his sales of drugs. Although appellant denied he was ever addicted to narcotics, he admitted that he had a drug problem. His practice of medicine, which he resumed on November 15, 1964, disintegrated once more when he was forced to file a petition in bankruptcy on May 18, 1965.

Appellant's contention that the Board held a ''hybrid hearing'' not specifically sanctioned by section 11517 of the Government Code and thus violating the Administrative Procedure Act cannot be sustained. The Board acted in appellant's best interests when it abandoned the March 2d hearing after appellant, who appeared without counsel, offered to stipulate to the facts alleged in the accusation in lieu of Officer Shaw's testimony, requested a continuance to retain counsel when the stipulation was rejected, later withdrew his

request, and finally confessed that he had understood that no evidence regarding his use of narcotics would be considered by the Board. Concerned about appellant's misunderstanding, the Board terminated the hearing and had the case assigned to a hearing officer. A review of the entire record discloses that neither appellant nor the counsel he subsequently retained objected to this proceeding and both sides assumed that the hearing on June 28th constituted an entirely new and de novo hearing rather than one continued merely for the purpose of taking additional evidence. Therefore, outcome of the hearing was clearly controlled by section 11517, subdivision (b), of the Government Code[1] which allows the Board to adopt the proposed decision prepared by the hearing officer and based solely upon evidence adduced before him.

Appellant next contends that he never received an opportunity to introduce evidence concerning the issue of entrapment and that the Board wilfully suppressed evidence tending to disclose entrapment, in violation of appellant's constitutional rights. At no time did appellant avail himself of the right to cross-examine Officer Shaw; this he interprets as a deprivation of his rights by the Board out of its fear that such cross-examination might reveal entrapment. In view of the fact that the March 2d hearing was terminated because appellant's conduct disclosed his misapprehensions, and the further circumstance that appellant was willing to stipulate to the truth of the accusation and was unprepared to introduce or, at any rate, at no time offered any evidence on entrapment, he may not now be heard to argue that he was deprived of the opportunity. The Board had no affirmative duty to raise the issue itself, especially since the application of this doctrine to the field of administrative law remains in doubt. (*Harris* v. *Alcoholic Beverage Control Appeals Board,* 245 Cal.App.2d 919, 924 [54 Cal.Rptr. 346]; *United Liquors* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 450, 454 [32 Cal.Rptr. 603].)

Moreover, appellant's counsel at the June 28th hearing took pains to avoid the introduction of testimony by Officer Shaw.

---

[1] Government Code, section 11517, subdivision (b), provides:

"(b) If a contested case is heard by a hearing officer alone, he shall prepare a proposed decision in such form that it may be adopted as the decision in the case. A copy of the proposed decision shall be filed by the agency as a public record and a copy of the proposed decision shall be served by the agency on each party in the case and his attorney. The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision."

He stipulated to the truth of the accusation without hearing Officer Shaw testify; and when the Board's attorney rested, appellants' counsel attempted to avoid having the doctor testify in his own behalf without assurance that Officer Shaw would not be called as a witness in rebuttal, a risk he nonetheless was ultimately forced to take. The record is clear that Officer Shaw was present and available to testify at the June 28th hearing had appellant wished to call him for direct or cross-examination.

Appellant contends that the Board rendered its decision on ex parte evidence since it retained the memory of the officer's testimony introduced at the earlier hearing. The Board, however, adopted the hearing officer's proposed decision in its entirety; that decision rested completely upon the evidence adduced at the June 28 de novo hearing. The hearing officer was not present at the earlier hearing and no resort to ex parte evidence of any sort occurred, as the trial court properly found.

Appellant further contends that the Board's findings of unprofessional conduct were based, in part, on the extrajudicial statements made by appellant to Officer Shaw concerning his own use of narcotics. This contention cannot be sustained since appellant, through his counsel, at the June 28 hearing stipulated to the truth of the accusation, freely and voluntarily, and he therefore is bound by his stipulation. The "corpus delicti" of the accusation was not, as appellant claims, proved by his extrajudicial statements, and even if it were this circumstance would not demand reversal because an administrative hearing to revoke or suspend a professional license is not a criminal procedure or governed by criminal legal precedents. (*Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534, 537-538 [10 P.2d 992]; *Murphy* v. *Board of Medical Examiners,* 75 Cal.App.2d 161, 166-167 [170 P.2d 510].) The admissions of a party may, therefore, be relied upon in the absence of independent evidence to support the Board's findings and decision with respect to charges of unprofessional conduct. (*Hansen* v. *Civil Service Board,* 147 Cal.App. 2d 732, 738 [305 P.2d 1012].)

Also appellant unjustifiably attacks the trial court's ruling in declining to accept evidence of entrapment, its findings, and its decision to deny the petition without remanding the case for modification of the penalty.

In order for the petitioner to be entitled to introduce additional evidence for the court's consideration in a man-

damus proceeding it must appear that he could not, in the exercise of reasonable diligence, have obtained and introduced such evidence to the Board or that it was improperly excluded at the hearing. (*Schoenen* v. *Board of Medical Examiners,* 245 Cal.App.2d 909, 913-914 [54 Cal.Rptr. 364].) Appellant offered no evidence of entrapment at the time of the criminal proceeding against him and at neither administrative hearing did he undertake the opportunity to introduce the issue. Since it cannot, thus, be claimed that such evidence was improperly excluded, the sole issue is whether reasonable diligence was used to obtain and assert it. Evidence of entrapment must by its nature exist at the time the alleged misconduct took place; yet appellant after four opportunities (his criminal trial, two administrative hearings, and original mandamus petition) failed to assert the issue. The defense was raised for the first and only time in an amendment to appellant's petition for mandamus. Appellant's tardy claim is not only suspect at this time, but clearly inappropriate at this late date and the trial court properly rejected it. " 'It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or "skeleton" showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court. [Citation.] The rule compelling a party to present all legitimate issues before the administrative tribunal is required in order to preserve the integrity of the proceedings before that body and to endow them with a dignity beyond that of a mere shadow-play. Had [appellant] desired to avail [himself] of the asserted [defense], [he] should have done so in the administrative forum, where the commissioner could have prepared his case, alert to the need of resisting this defense, and the hearing officer might have made appropriate findings thereon.' " (*Harris* v. *Alcoholic Beverage etc. Appeals Board,* 197 Cal.App.2d 182, 187 [17 Cal.Rptr. 167].)

Appellant attacks the trial court's findings that the grounds of the accusation were true, a fact to which appellant stipulated. He also claims his narcotics conviction has not become final and the matter is still pending on appeal. In fact, appellant filed no notice of appeal and his motion to set aside his conviction and guilty plea, which is merely a collateral attack on the judgment, was ultimately denied after consideration by the trial, appellate and Supreme Courts of California. His conviction has been final since the time for appeal

elapsed, well before the Board properly rendered its decision to revoke his license. (Bus. & Prof. Code, § 2383.)

Finally, the trial court affirmed the Board's decision in its entirety and that decision revoked appellant's license "on each cause for disciplinary action established." Thus, even if the court had vacated one or more, but not all counts, appellant would not be entitled thereby to have his license reinstated, or to have the matter remanded to the Board for further consideration of the penalty. " 'When an administrative tribunal after considering several charges against a licentiate makes a separate finding and imposes a specific sanction for each offense, the accused, in a mandate proceeding, is not entitled to have the cause sent back to the administrative agency for reconsideration of the penalty because the court vacates the administrative order as to some accusations, as would be the case if the penalty imposed had been based on collective rather than separate findings.' " (*Randle* v. *California State Board of Pharmacy*, 240 Cal.App.2d 254, 262 [49 Cal.Rptr. 485] ; *Mast* v. *State Board of Optometry*, 139 Cal. App.2d 78, 91-93 [293 P.2d 148] ; *Caro* v. *Savage*, 201 Cal. App.2d 530, 544 [20 Cal.Rptr. 286].)

Appellant is not entitled to a reconsideration of the penalty imposed by the Board on any ground. The hearing officer, as found by the trial court, "considered all relevant evidence presented at the administrative hearing on June 28. 1965, and properly considered, weighed and summarized said evidence in his proposed decision to the Board; it is not true that the hearing officer arbitrarily, capriciously or in any other respect failed to consider and set forth in his proposed decision any relevant mitigatory evidence presented at the administration hearing on June 28, 1965." The court found further that the Board "in revoking petitioner's physician's and surgeon's certificate, acted reasonably and its action did not constitute an abuse of discretion." On this basis the conduct of the Board is deemed justifiable and appropriate.

"In determining whether there has been an abuse of discretion the Supreme Court of this state has stated that 'if reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion that the . . . [administrative body] acted within the area of its discretion.' [Citations.] It is equally well settled that in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own

discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh. [Citation.] Such interference, in the light of the foregoing authorities, will only be sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion.'' (*Brown* v. *Gordon*, 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901].)

Respondent filed its brief in this case on July 13, 1967. Thereafter, some 29 days later appellant filed what is denominated a reply brief wherein he ''submits the following for the consideration of the court,''—that the Administrative Procedure Act (Gov. Code, § 11500 et seq.) is unconstitutional as applied to Doctor Shakin. There is no merit to such assertion. The act is consitutional. Appellant then refers to rule 40 of section 6068 of the Business and Professions Code. There is no such numbered rule under such numbered section. Further, appellant asserts that section 1094.5, Code of Civil Procedure, is unconstitutional as applied to the facts of this case. This assertion also lacks merit. The act as here applied is constitutional.

We note that counsel for appellant has raised these points in his reply brief for the first time and perhaps they should not be considered for obvious reasons of fairness. (See *Richard* v. *Richard*, 123 Cal.App.2d 900, 903 [267 P.2d 867]; *Crowder* v. *Lyle*, 225 Cal.App.2d 439, 450 [37 Cal.Rptr. 343]; *Duncanson-Harrelson Co.* v. *Travelers Indem. Co.*, 209 Cal. App.2d 62, 70 [25 Cal.Rptr. 718].) However we have answered his assertions and disposed of the contentions.

Counsel for appellant filed a notice of motion to disqualify the judges of this court from hearing the appeal. There is set forth in a footnote the chronology of events, filings and rulings pertinent to this phase of the case.[2]

---

[2]1966

| August 24 | Filed an application for a stay order in the nature of a petition for a writ of supersedeas. |
| August 26 | Answer filed to the petition for the writ by respondents. |
| August 29 | This court denied the writ (Wood, P. J., McCoy and Fourt). |
| September 2 | Appellant requested this court to grant a stay pending a review of its order of August 29, 1966 by the Supreme Court. |
| September 2 | Application denied (Wood, P. J., and McCoy). |
| October 7 | Appellant petitioned for a hearing before the Supreme Court. |

We hold that the documents filed by counsel in his efforts to disqualify this court were not timely filed, were not in proper form and in all events were legally insufficient.

Section 170 of the Code of Civil Procedure deals with the disqualification of judges. That section in part provides, in effect, that whenever a judge shall have knowledge of facts

| | |
|---|---|
| October 14 | Appellant's petition to the Supreme Court denied. |
| October 21 | Appellant made new application for a stay order. |
| October 24 | Petition denied (Fourt, Acting P. J., Lillie, McCoy). |
| 1967 | |
| March 27 | Clerk's and reporter's transcript in the matter of the appeal filed with court. |
| March 28 | Counsel for appellant wrote a letter to this court requesting, in effect, that the cause be transferred to some other division of the court for the reason, in part, that the petition for the writ of supersedeas had been denied by the court and by such denial ''a decision was reached on the merits, at least in part. . . .'' |
| June 12 | Appellant filed his opening brief. |
| July 11 | Appellant made a third application for a stay. |
| July 13 | Respondent filed its brief. |
| July 20 | The application for a stay was denied by the court (Wood, P. J., Lillie, McCoy). |
| August 11 | Appellant filed reply brief. |
| August 11 | Appellant's counsel filed a notice of motion to disqualify judges of Division One from further hearing any matter concerned with the appeal, the motion to be heard on August 22, 1967 (regular calendar date). Notice accompanied by declaration of counsel (not Shakin) to the effect that (1) since the court on three occasions rejected the application for a stay it is indicated thereby that the court has already passed upon the merits of the bill, and (2) further that it is the opinion of counsel from a reading of reported cases that there seems to exist in this court ''a natural bias or prejudice . . . against the constitutional rights of an individual . . .'' and (3) that there exists between counsel and one or more of the Justices of the court an antipathy to the extent that no client of his can secure an impartial determination in the court. The declaration and notice of motion were apparently signed by counsel for appellant on August 9, 1967, but were filed in this court on Friday, August 11, 1967, at about 4 p.m. |
| August 16 | This court ordered the declaration stricken from the files. |
| August 22 | At about five minutes before this court convened on August 22, 1967, for the regular calendar, counsel filed what he titled a supplemental declaration. |
| | The supplement set forth in effect that the court has decided matters in a way which is unsatisfactory to affiant and apparently not in harmony with his views. |
| August 22 | This court ordered the supplemental declaration to be stricken from the files of this case. The motion to disqualify the court was thereupon denied. Neither side argued the cause and the matter was submitted. |

which disqualify him to act in any proceeding, it shall be his duty to declare the same in open court and steps shall be taken to have another judge hear the matter. Further, it is therein provided that ''[w]henever a judge of a court of record who shall be disqualified under the provisions of this section, to sit or act as such in any action or proceeding pending before him, neglects or fails to declare his disqualification in the manner hereinbefore provided, *any party to such action* or proceeding who has appeared therein may present to the court and file with the clerk a written statement objecting to the hearing of such matter or the trial of any issue of fact or law in such action or proceeding before such judge, and *setting forth the fact or facts constituting the ground of the disqualification* of such judge.'' (Italics added.) Further, that '' [t]he *statement of a party* objecting to the judge on the ground of his disqualification, *shall be presented at the earliest practicable opportunity,* after his appearance and discovery of the facts constituting the ground . . .'' (Italics added.)

 There are several reasons for the striking of the declaration and the supplemental declaration in the present case. First, they were not presented at ''the earliest practicable opportunity.'' It was known by Doctor Shakin and his counsel for over a year (since August 1966) that this division of the court was to hear the petitions for the writ of supersedeas and the appeal. The membership of this division of the court is presently constituted as it was at the time the proceedings were lodged in this court. Had counsel any intention of attempting to disqualify this court, he should have instituted or caused to be instituted proper disqualification proceedings many months before August 11, 1967, and not waited until eleven days before the matter was calendared to be heard on oral argument.

 It is obvious that timeliness is extremely important, otherwise the sections of the law with reference to disqualifying judges might, on occasions, be abused by dishonest litigants or unscrupulous lawyers. In other words, it would create an intolerable situation to permit an attorney or a party who knew, or claimed to know of disqualifying facts, deliberately to withhold the making of a disqualification statement until he knew that the filing of such a statement would disrupt the orderly processes of a court. Too, if disqualification is not urged at the earliest practicable opportunity, there is a waiver of such alleged disqualification. (*Sacramento etc.*

*Drainage Dist.* v. *Jarvis,* 51 Cal.2d 799, 801-802 [336 P.2d 530].) :

 "The bias and prejudice which must be shown in order to disqualify a judge under section 170 of the Code of Civil Procedure is bias and prejudice against the *party* moving for disqualification." (Italics added.) (*People* ex rel. *Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101, 110 [223 P.2d 37].) There is no declaration or statement by Doctor Shakin in this case—in other words, Doctor Shakin, the party plaintiff in this cause, has made no claim of bias or prejudice upon the part of any member of this court. It is his counsel who complains or declares in part, to the effect that the court has decided matters, in which he, the attorney, was not involved, in a manner not to his liking. This shows so little basis for claiming personal bias or prejudice against Doctor Shakin as to justify the conclusion that the charge of disqualification is sham and frivolous. (See *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250] ; *People* v. *Sweet,* 19 Cal.App.2d 392, 396 [65 P.2d 899] ; *Evans* v. *Superior Court,* 107 Cal.App. 372, 379-380 [290 P. 662] ; *Kreling* v. *Superior Court,* 63 Cal.App.2d 353, 362 [146 P.2d 935].)

It is true that this court on three separate occasions denied petitions for a stay of the judgment. In the first declaration (filed August 11, 1967) counsel sets forth that the denials of the petitions were within the discretion of this court and nowhere does he indicate that the court abused that discretion in denying such petitions. He disagreed with the determinations this court made, and sought a hearing in the Supreme Court where such a hearing was denied. Even had this court's denials of a stay been faulty, it would make no difference under the circumstances of this case. "Erroneous rulings against a litigant, even when numerous and continuous, form no ground for a charge of bias and prejudice, especially when they are subject to review on appeal." (*Kreling* v. *Superior Court,* 63 Cal.App.2d 353, 359 [146 P.2d 935].) "Nor are a judge's expressions of opinion, uttered in what he conceives to be the discharge of his judicial duty, evidence of bias or prejudice." (*McEwen* v. *Occidental Life Ins. Co.,* 172 Cal. 6, 11 [155 P. 86].) "[A] wrong opinion on the law of a case does not disqualify a judge, nor is it any evidence of bias or prejudice. . . . Where a judge is mistaken as to questions of law, a litigant cannot substitute for his remedy by appeal, proceedings for the disqualification of a judge for alleged bias

and prejudice.'' (*Ryan* v. *Welte,* 87 Cal.App.2d 888, 893 [198 P.2d 351].)

Counsel seems to assert that because this court ruled adversely to his petitions for supersedeas, it necessarily and at that time decided the merits of the case on appeal against his client (this regardless of the fact that the briefs on appeal were not even on file). This court did not pass upon the merits of the judgment under appeal in determining whether to grant or deny supersedeas. In *Estate of Dabney,* 37 Cal.2d 402, 406-407 [232 P.2d 481], it is appropriately stated: ''The correctness of the decision of the trial court (at least when it is not apparent on the face of the record, and it is not so apparent here) is not involved in a supersedeas proceeding; it 'is not the function of such a writ to reverse, supersede or impair the force of, or pass on the merits of the judgment or order from which the appeal is taken; the validity of such judgment or order is to be reviewed on the appeal therefrom. [Citations.] Its purpose is merely to suspend the enforcement of the judgment pending the appeal.' '' ▮ Even though some determinations were made at the times this court passed upon the various petitions, such is permissible to the extent that it is necessary under the circumstances. However, any determinations made in a supersedeas proceeding do not preclude a re-examination of such matters upon the final argument to whatever extent their re-examination may appear to be justified. (*Orange County Water Dist.* v. *City of Riverside,* 171 Cal.App.2d 518, 523 [340 P.2d 1036].) In any event the decisions in the supersedeas proceedings are not determinative of the appeal. (*Guardianship of Walters,* 37 Cal.2d 239, 252 [231 P.2d 473].)

Further, the declarations with which we are concerned do not state facts as contemplated in the statutes. Bias and prejudice are never implied and must be established by clear averments.

The court in *Calhoun* v. *Superior Court,* 51 Cal.2d 257, 260 [331 P.2d 648], succinctly stated the requirements under the law as follows: ''Section 170 of the Code of Civil Procedure requires a verified statement *showing facts,* not conclusions, from which the claimed disqualification appears to be probable, that is, from which facts the disqualification appears to follow as a conclusion of law. Furthermore, the stated facts must make the bias appear probable *as to the issue or issues to be tried.*''

This court said in *Agnew* v. *Contractors Safety Assn.,* 216

Cal.App.2d 154, 159 [30 Cal.Rptr. 690] (hearing denied): " '. . . section 170 requires the affidavit of bias and prejudice to set forth "the fact or facts constituting the ground of the disqualification of such [the trial] judge." *A statement that contains nothing but conclusions and sets forth no facts constituting a ground of disqualification may be ignored or stricken from the files by the trial judge.* [Citations.] Where the statement is insufficient the judge can so determine, whereupon the procedure provided by section 170 is not applicable. [Citation.] "Where no facts are set forth in the statement there is no issue of fact to be determined. It is only where an appropriate issue of fact is presented by the statement that a judge is prevented from passing on the question of his own disqualification under section 170." [Citation.]' " (See also *People* v. *Sweeney,* 55 Cal.2d 27, 35 [9 Cal.Rptr. 793, 357 P.2d 1049].)

In other words, where the statement is legally insufficient the judge may ignore it or strike it from the files. (*Ensher, Alexander & Barsoom* v. *Ensher,* 225 Cal.App.2d 318, 323 [37 Cal.Rptr. 327]; *Neblett* v. *Pacific Mut. Life Ins. Co.,* 22 Cal.2d 393, 401 [139 P.2d 934]; *Fishbaugh* v. *Fishbaugh,* 15 Cal.2d 445, 457 [101 P.2d 1084]; *People* ex rel. *Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101, 109 [223 P.2d 37]; *People* v. *Hooper,* 16 Cal.App.2d 704, 708 [61 P.2d 370]; *Ephraim* v. *Superior Court,* 42 Cal.App.2d 578 [109 P.2d 378]; *People* v. *Nolan,* 126 Cal.App. 623 [14 P.2d 880].) There being no facts stated in the declarations in this case, we elected to strike the same from the files.

Counsel for appellant also stated, in effect, that he believes there is antipathy between the court and himself to the extent that no client of his can receive an impartial declaration of rights or of the law when he appears in this court. What was said in *Higgins* v. *City of San Diego,* 126 Cal. 303, at page 313 [58 P. 824, 50 P. 670], is appropriate: "The judges might, without just provocation, have thought the attorneys guilty of contempt and might have said so, but we cannot say that for this reason they would be disposed to bear down upon the attorneys' client or unduly favor the city. Nor can we so far impeach the sense of fairness and justice which it is presumed rests in the conscience of every judge as to say that, because the attorney has incorporated distasteful and even scandalous matter in a brief reflecting upon the judge, therefore the judge would punish the offense by mulcting the innocent client. If we must presume bias and prejudice toward the

client because of ill-feeling toward the attorney, it would establish a dangerous rule by which the attorney, through his own fault, could have his case transferred to another judge by quarreling with the court. We prefer to believe that a judge may, with or without cause, cordially dislike and even distrust an attorney, and yet be capable of doing exact justice toward his client.''

In any event, there is no antipathy between any member of this court and counsel.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied November 1, 1967.